Filed 3/15/13  Lister v. Bowen CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SONYA LISTER,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL BOWEN,<br><br>        Defendant and Appellant. | A134290<br><br>(San Francisco City and County<br> Super. Ct. No. 08-806221) |

Michael Bowen appeals from the trial court's order renewing a restraining order against him for three additional years, arguing that reversal is necessary on multiple grounds.  Sonya Lister, petitioner below, opposes Bowen's grounds, and also argues that the appeal must be dismissed as untimely.  We conclude the appeal is timely but that Bowen's appellate claims lack merit.  Therefore, we affirm the court's order.

## BACKGROUND

### *The Initial Restraining Order*

According to Lister's November 9, 2011 testimony, she is an outreach case manager for Community Awareness Treatment Services (CATS) and in the course of her duties works out in the field and at different CATS locations in San Francisco.  In 2008, the trial court, having found that Bowen had been stalking Lister, including in the parking lot by her workplace, issued a three-year restraining order against Bowen, through September 10, 2011.  The court ordered Bowen to stay 100 yards away from Lister and her daughter, as well as Lister's Hayward, California home, vehicle, and workplace at CATS, except that he could visit certain CATS offices for income-producing purposes.

1

The court further limited Bowen's ability to contact Lister's family members or spend time in Lister's neighborhood.

In an unpublished opinion, *Lister v. Bowen*, No. A123682, issued on June 29, 2010, we summarized Lister's testimony to the trial court at the hearing on her request for a restraining order.[1]  Among other things, Lister told the trial court she had dated Bowen five or six years before, and had recently dated him again for about a month.  In the first half of July 2008, he suddenly appeared as she walked in a parking lot where she worked and made comments indicating that he was stalking her, such as that he was around watching her even though she did not always see him, and indicated that he was going to keep it up.  Later in July 2008, he appeared again as she was walking in the parking lot and started talking to her again.  She did not see where he came from, felt unsafe, and did not wish to talk to him.  She had not contacted him or called him, they did not have a good rapport, and he knew she did not care to speak to him.

Lister also said she had seen Bowen's vehicle parked in front of a Hayward restaurant that was three blocks from her home, although he lived in Daly City, and that she was " 'not able to access entertainment and things' " " 'with him stalking around and driving around and frequenting' " her neighborhood.  He also had contacted her 16-year-old daughter without Lister's permission or knowledge, and visited her at their home.  Her daughter had contacted him regarding driving lessons he had paid for, unaware of her mother's concerns about him.  Lister also said she thought Lister was " 'buying' " her family and friends.

Lister said Bowen frequented the offices of CATS, having graduated from it, sometimes visiting at the request of others to say hello or " 'for a consultation on a job because he [was] a contractor.' "  Lister did not want to see him there because she felt he was stalking her.

---

[1]  Lister attaches our previous opinion as an exhibit to her respondent's brief.  We construe this as a request for judicial notice and grant it pursuant to Evidence Code section 452, subdivision (d).

At the hearing, the trial court, after noting that 11 years before Bowen had pled guilty to inflicting corporal injury to a spouse of inhabitant, albeit before he became " 'clean and sober', " found Bowen's history " 'pretty damning.' "  That, along with Lister's contentions and Bowen's own statements at the hearing, indicated to the court that he was " 'pretty obsessive about folks" that he became involved with, engaged in " 'stalking,' " and was " 'invasive' " and getting into people's "emotional and psychological space.' "

After the court issued the initial restraining order, Bowen retained legal counsel and filed a motion for reconsideration.  The court denied his motion and Bowen appealed on a variety of grounds.  We affirmed the trial court's order and remanded the matter to the trial court with the instruction that it promptly issue a single, comprehensive written order of all of its orders to date.

In July 2010, the trial court issued an amended restraining order that, among other things, ordered that Lister stay 100 yards away from the office building in which Lister was employed, and stated that, if Lister was not present at other CATS offices or locations, Bowen could enter them for income-producing purposes, although he was required to leave if Lister arrived.  The court added to the written order its previous oral instruction that Bowen not initiate contact with Lister's family or continue any kind of relationship with them.

### The Court's Renewal of the Restraining Order

On July 11, 2011, Lister filed a request to renew the restraining order with the trial court.  The court held a hearing on September 7, 2011 regarding her request, at which Bowen, represented by counsel, and Lister both appeared and testified under oath.  Among other things, Lister testified that on July 7, 2011 she was told not to come into her workplace building because Bowen was present there; as a result, she stayed away for two days.  She also testified that Bowen approached her stepmother at a store about a year before and told her he had heard she was mad at him for some things he had said at a previous court hearing.  Lister added that she had seen Bowen within a couple of blocks of her house in 2008 or 2009.

3

Bowen's counsel argued that there was no credible reason to renew the restraining order, as most of Lister's allegations were about 2008, Bowen had not had any contact with Lister since that time, and there was no credible evidence to suggest that Bowen posed any imminent risk of harm to Lister. Counsel referred the court to a declaration, apparently by Perry Zinnanti, indicating that Bowen had gone into the CATS building "to address someone who had relapsed," and had promptly left when he learned there were some questions about his right to be there.

The trial court cited Family Code section 6345 (section 6345) as indicating that orders could be renewed at the request of a party for either five years or permanently, without a showing of any further abuse. Bowen's counsel asked for additional time to brief the question because in his experience, "there usually has to be some objective fear. Some reason to extend it." Counsel also argued the order had a chilling effect on Bowen's business.

The trial court concluded that, since Bowen's defense was based on his allegation that there was not further abuse and that was not statutorily required, it was appropriate to renew the order for five years. The court rejected Bowen's counsel request for an evidentiary hearing to address the legal standard, stating, "It is not an evidence issue, it is a legal issue." Asked to clarify its ruling, the court stated that "[Lister] has made factual allegations. She has made it in her request and she has made them here today. And I believe under the statute she has made sufficient showing to have a reissuance of the order. And that's on the face—on the statute. She made the request to reissue." It also stated, "My finding is that she has met the requirements of [section] 6345[, subdivision] (a). And I am choosing the shorter duration of the choices that are outlined there for me."

On September 7, 2011, the court issued a restraining order against Bowen for five more years, until midnight on September 7, 2016 (September 7 order).

### Bowen's Motion for Reconsideration

On September 16, 2011, Bowen filed a motion for reconsideration of the court's order pursuant to Code of Civil Procedure section 1008, subdivision (a). The register of

4

actions contained in the record indicates that, for reasons that are neither explained by the parties nor apparent from the record,[2] the hearing, originally scheduled for October 25, 2011, was continued to November 2, 2011 and then to November 9, 2011.

At the November 9, 2011 hearing (November 9 hearing), Bowen, again represented by counsel, and Lister appeared. At the beginning of the hearing, the court indicated that the legal standard, pursuant to the "Ricci case," an apparent reference to *Ritchie v. Conrad* (2004) 115 Cal.App.4th 1275 (*Ritchie*), was that Lister "must show a reasonable apprehension of future abuse and [her] showing must be made by a preponderance of the evidence."

Lister testified at the November 9 hearing that Bowen had violated the initial protective order multiple times. First, in December 2009, he sent mail to her employer. This caused Lister to be "very, very stressed out and worried about why he's contacting my employer, what is his reasons for it, like what else could they have been discussing about me," and also caused fear.

Second, Lister said, on July 7, 2011, Bowen entered one of CATS's buildings, on Mission Street. Her director told her not to go to that site because Bowen was present, and he was asked to leave the site immediately. This caused Lister to worry.

Third, according to Lister, Bowen sent mail to her home on two occasions in October 2011. She was afraid to open the mail, which was addressed from him, for fear that it was "poisoned, anthrax." She gave one envelope to the police and retained the other, which was at her home.

Lister also testified that since she filed for a restraining order, Bowen continuously had filed paperwork with the court, causing her to miss work to come to the court, which she considered to be continuous harassment.

---

[2] At the November 9 hearing, the court referred to "[w]hen we were here last week, we set this opportunity for [Bowen] to give testimony and also to have this opportunity for you [respondent] to address whether the court should be using a restraining order." However, the parties do not further explain what occurred at this prior hearing.

5

Lister also referred to private investigators following her and her friends, declarations written against her, including by a coworker, and Bowen's tearing apart of her family "by using his money to buy his way into some people in my family who are now no longer dealing with him." Among other things, she said, he had wanted her aunt to come to court the week before to testify against her. He also told someone at her work that she had engaged in "paycheck fraud," resulting in an investigation of her in February 2009 that found the allegations were not true.

On cross-examination by Bowen's counsel, Lister testified that the letters she received from Lister in October 2011 were copies of filings in the present case. In her view, the correct way to send her such documents would be through his attorney. Lister also acknowledged that she had been convicted of larceny because she "did not report [her] earnings to the housing authority seven years ago." Bowen's counsel argued that this information was relevant to Lister's credibility.

Lister called a coworker as a witness, who testified that after Bowen appeared at the CATS office in July 2011, Lister "was very distressed—crying, unable to focus on her . . . case load, in fear . . . that her work area is no longer a safe place." The coworker said that from July 17, 2008, to the date of the hearing, Lister had been overwhelmed by very stressful legal proceedings, had been an "emotional wreck," and had missed work.

Lister also called her sister as a witness. She testified that since May 2008, the situation had been "very stressful" for Lister, who "seems very paranoid," worrying that she would run into Bowen at certain places. Lister's spirit had changed and she showed a lot of anxiety, such as when she had to go to court. The family was divided about the matter.

On cross-examination, Lister's sister testified that Bowen had held some property of a cousin, including a motorcycle, which caused an aunt to support him for fear that Bowen would throw the motorcycle in the street. The sister also said she understood that criminal proceedings against Lister had been initiated as a result of Bowen hiring a private investigator and getting criminal charges brought against her based on hearsay;

6

the sister had no personal knowledge of this but had been told it by family members that dealt with Bowen.

Bowen's counsel called Perry Zinnanti as a witness and his declaration was admitted into evidence, presumably the declaration contained in the record that was filed with the court on August 18, 2001. Zinnanti declared that he contacted Bowen in July 2011, and asked him if he could visit a CATS employee who Zinnanti had heard had relapsed, and with whom Bowen was close. Zinnanti further declared that Bowen did not go to the CATS offices to harass Lister, but to help another person in crisis.

Bowen also testified. He said his purpose in entering a CATS building on July 7, 2011 was to see one of his counselors, who, Bowen had been told, had relapsed. He intended to see the counselor, but was not able to; he spoke to another person and did not mention the restraining order.

Bowen denied ever hiring a private investigator to follow Lister, or having any involvement in the criminal proceedings against her. He said he had a friend mail court papers to Lister that contained the friend's address, not his own.

On cross-examination by Lister, Bowen acknowledged his visit to Lister's workplace on July 7, 2011 was not for income-producing matters. He denied being within three blocks of her Hayward home, attending a gym in her neighborhood to which he once belonged, or driving down her street since the issuance of the restraining order, but acknowledged he had been in Hayward and had dinner there. He also acknowledged contacting one of her family members after the previous week's hearing to tell her he had told the judge that he was going to request her presence at the hearing.

At the end of the hearing, the trial court denied Lister's motion for reconsideration. It stated that, based on the "Ricci case," the test to be considered was whether Lister had a reasonable apprehension of future abuse. It found that Lister had "shown that she has an apprehension of future abuse, and I don't find that that apprehension is unreasonable. I do believe given her concerns about Bowen following her, concerns about his involvement in her family in a way that wasn't appropriate are sufficient reasons for her to have an apprehension of future abuse."

7

The court further noted Bowen was "sophisticated" and "had advice of counsel" such that he knew the scope of the protective order and had violated it. The court specifically referred to Bowen's choosing to enter Lister's work site for a non-economic reason in violation of the order, and with an awareness of the serious and sensitive nature of a heavily litigated dispute that had put him on notice that his actions would have an impact on Lister. This caused the court "grave concern."

The court was also concerned about the number of hearings held on the matter. It indicated the view that Bowen could not "let this go" for reasons that were not clear to the court, and urged him to "let go" and "move on."

The court then ruled that Lister had shown a reasonable apprehension of future abuse and met the standard established in the "Ricci case," and that it was going to keep the restraining order in place, but would reduce its length from five to three years. It ruled that the September 7 order would remain in effect until a new order was submitted to it, which was to "be exactly the same in terms of the terms" as the September 7 order, but three years shorter in length.

On December 14, 2011, the court issued a new restraining order that contains the same terms and conditions as the September 7, 2011 restraining order, except that it expires at midnight on September 7, 2014 rather than on September 7, 2016 (December 14 order).

On December 22, 2011, Bowen filed a notice of appeal from the court's December 14 order.

**DISCUSSION**

Bowen argues that reversal is necessary because the trial court erred in applying section 6345, in relying on the fact of Bowen's litigation as a ground for reissuance of the restraining order, and in issuing an overbroad injunction that improperly invaded Bowen's associational interests with CATS. Lister opposes each ground and argues that Bowen's appeal should be dismissed as untimely. We begin with whether this appeal has been timely made.

8

# I. *The Timeliness of the Appeal*

Lister argues that we must dismiss this appeal as untimely because Bowen filed his notice of appeal beyond the time allowed, since the date he filed it was more than 90 days after he filed his motion for reconsideration. Bowen disagrees, arguing that the appeal should be construed as from a *grant* of a motion for reconsideration and issuance of an order after a new hearing, from which he is entitled to appeal. We conclude the appeal was timely because, however we construe the court's ruling on Lister's motion for consideration, the December 14 order included a material or substantial modification of the September 7 order that enabled Bowen to appeal from the latter order.

The parties do not dispute that the court's September 7 order was an appealable order. (Code Civ. Proc., § 904.1, subd. (a)(6).) Bowen then filed a motion for reconsideration pursuant to Code of Civil Procedure section 1008, subdivision (a). California Rules of Court, rule 8.108(e) provides that when a party does so, the time to appeal is extended to the earliest of three circumstances, which in this case, Lister asserts, was 90 days from Bowen's filing of his motion for reconsideration on September 16, 2011.[3]

Bowen, relying on case law involving grants of motions for reconsideration (see *Mink v. Superior Court* (1992) 2 Cal.App.4th 1338, 1342 and *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1242), argues that "[a] better characterization of events is that the trial court granted the Motion to Reconsider," pointing to the court's holding of a long cause evidentiary hearing,

---

[3] Rules of Court, rule 8.108(e) states:

"If any party serves and files a valid motion to reconsider an appealable order under Code of Civil Procedure section 1008, subdivision (a), the time to appeal that order is extended for all parties until the earliest of:

"(1) 30 days after the superior court clerk, or a party serves, an order denying the motion or a notice of entry of that order;

"(2) 90 days after the first motion to reconsider is filed; or

"(3) 180 days after entry of the appealable order." (Cal. Rules of Court, rule 8.108(e).)

where, Bowen contends, the court considered "for the first time the factors detailed in *Ritchie*[, *supra*], 115 Cal.App.4th 1275. It was the conduct of this hearing and the prejudice which flowed from it which [Bowen] complains of here." Should we find his appeal untimely, he asserts, "there would be no way for this court to reach the errors of the hearing challenged here."

It does not appear that the trial court granted the motion for reconsideration. At the end of the November 9 hearing, the court did not explicitly state that Bowen's motion was denied, but referred to its review of the motion for reconsideration and ordered that the September 7 order would remain in effect until a new order was issued containing the identical terms and conditions, albeit with a time period shortened from five to three years. Also, the register of actions contained in the record states that the court denied Bowen's motion for reconsideration and, although we do not know why the court held the November 9 evidentiary hearing, the register also indicates that, rather than previously grant the motion, the court continued the hearing regarding it twice. It appears that the trial court denied the motion, but in the course of doing so ordered a reduction in the length of the restraining order, for unexplained reasons.

Nonetheless, given these circumstances, we agree with Bowen that he had the right to appeal from the December 14 order, although for a reason he does not directly raise. That is, the trial court's reduction of the length of the new restraining order from five to three years was a material or substantial modification of the September 7 order, as indicated in the case relied on by Lister for her argument, *Dakota Payphone, LLC v. Alcaraz* (2011) 192 Cal.App.4th 493 (*Dakota*).

In *Dakota*, a party appealed from an amended judgment, seemingly in a timely manner. Confronted with the issue of whether to dismiss the appeal, the appellate court, after acknowledging that appellate courts generally had no jurisdiction to consider untimely appeals, stated that " [t]he resolution of this issue turns on the question whether the amended judgment superseded the original judgment for purposes of computing the time in which to file a notice of appeal." (*Dakota*, *supra*, 192 Cal.App.4th at p. 504.) "The crux of the problem . . . is whether there is a substantial change in the rights of the

10

parties such that allowing an amendment nunc pro tunc (relating back to the original judgment) would unfairly deprive them of the right to contest the issue on appeal or otherwise. . . . [I]t is ultimately the parties' ability to challenge the ruling that is key. The right we are concerned with materially affecting is the right to appeal." (*Id*. at pp. 506-508.)

Similarly, this court, in *Nestle Ice Cream Co., LLC v. Workers' Comp. Appeals Bd.* (2007) 146 Cal.App.4th 1104, stated regarding civil judgments that "the period for filing a notice of appeal is not extended by an amendment that corrects a clerical error, but it is extended by an amendment that effects a substantial or material change or involves the exercise of a judicial function or judicial discretion." (*Id*. at p. 1109.)

We conclude that the trial court's reduction of the length of the renewed restraining order from five to three years in its December 14 order was a material or substantial modification of the September 7 order. In the course of arguing for dismissal, Lister asserts that the trial court had no legal authority to reduce the length of the restraining order from five to three years. Because Lister has not filed a cross-appeal, we need not address this issue. However, Lister's argument highlights that, if she had chosen to appeal this reduction, we would have undoubtedly addressed it, which inevitably would have led to an evaluation of the evidence introduced at the November 9 hearing, including that which was not presented prior to issuance of the September 7 order, and the court's findings after the hearing. In other words, the amended restraining order contains a substantial modification regarding the parties' rights based on additional evidence and involved the exercise of judicial discretion, albeit in Bowen's favor.

Lister argues that the December 14 order did not "reset" Bowen's time to appeal based on *Dakota*. Lister points out that the *Dakota* court rejected the argument that a reduction of $4 million in damages via an amended judgment reset the time in that case because "[a]ll other parts of the judgment not affected by the modification remained valid and could have been challenged by appeal." (*Dakota*, *supra*, 192 Cal.App.4th at p. 509.) However, the *Dakota* court determined that the alteration to the judgment was "not substantial and [did] not materially affect the parties' rights" under the circumstances of

11

that case, analogizing the change to postjudgment orders that filled in the blanks for attorney fees and interest.  (*Ibid.*)  In the present case, the change was one of substance, as it eliminated two years of previously ordered restraints against Bowen, substantively altering the parties' rights.  It is more analogous to the circumstances discussed in *Stone v. Regents of University of California* (1999) 77 Cal.App.4th 736, one of the cases discussed in *Dakota* (*id*. at p. 505), in which the appellate court ruled that a modification of a judgment to require a party to pay an additional nine months of legal expenses "was undeniably one of substance" that "materially affected their rights."  (*Stone*, at p. 744.)  We reach the same conclusion here.

In short, whether or not the trial court denied the motion for reconsideration, Bowen correctly and timely appealed from the December 14 order.  We now turn to the merits of Bowen's appeal from the December 14 order.

## II.  *Reasonable Apprehension*

Bowen first argues that the trial court erred in its application of section 6345 because Lister did not have the objectively reasonable apprehension of future abuse required pursuant to *Ritchie*, *supra*, 115 Cal.App.4th 1275.  Lister counters that the trial court properly renewed the restraining order based on her reasonable apprehension of future abuse, which was justified because of Bowen's violation of the order and his litigation abuse.  We agree with Lister, based on the evidence cited by the trial court regarding Bowen's violation of the order, particularly in light of the facts underlying the issuance of the original order.

### A.  *Legal Standards*

As we have discussed, the procedural history below is somewhat muddled.  The trial court, in the course of apparently denying respondent's motion for reconsideration, held an evidentiary hearing on November 9, at which it considered additional evidence regarding renewal of the order, considered the legal standard for renewal articulated in *Ritchie*, apparently for the first time, and substantially modified its order.  The parties' arguments presume that our standard of review under these muddled circumstances is to evaluate all the evidence presented at this hearing pursuant to *Ritchie* to determine if

12

there is a basis for the renewal of the order. We do so without determining whether our standard of review should be more constrained in some way because of the context in which the trial court's ruling was made.

Section 6345 provides in relevant part that a trial court may renew a restraining order "upon the request of a party, either for five years or permanently, without a showing of any further abuse since the issuance of the original order, subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party. . . ." (§ 6345, subd. (a).)

When contested, a request to renew a restraining order should not be granted pursuant to section 6345 simply because the requesting party has "a subjective fear the party to be restrained will commit abusive acts in the future." (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1288.)[4] "The 'apprehension' those acts will occur must be 'reasonable.' That is, the court must find the probability of future abuse is sufficient that a reasonable woman (or man, if the protected party is a male) in the same circumstances would have a 'reasonable apprehension' such abuse will occur unless the court issues a protective order." (*Ibid.*) However, an imminent and present danger of abuse is not required. (*Ibid.*) In other words, under this objective test, "[a] trial court should renew the protective order, if, and only if, it finds by a preponderance of the evidence that the protected party entertains a 'reasonable apprehension' of future abuse. . . . [T]his does not mean the court must find it is more likely than not future abuse will occur if the protective order is not renewed. It only means the evidence demonstrates it is more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension is genuine and reasonable." (*Id.* at p. 1290.)

---

[4] "Abuse" does not have to involve physical violence. It is statutorily defined as including "stalking, threatening, . . .harassing, telephoning, . . . contacting, either directly or indirectly by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party and, in the discretion of the court, on a showing of good cause, of other named family or household members." (Fam. Code, §§ 6203, subd. (d); 6320, subd. (a).)

In evaluating whether the requesting party has a reasonable apprehension of future abuse, "the existence of the initial order certainly is relevant and the underlying findings and facts supporting that order often will be enough in themselves to provide the necessary proof to satisfy that test." (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1291.) "Also potentially relevant are any significant changes in the circumstances surrounding the events justifying the initial protective order. For instance, have the restrained and protected parties moved on with their lives so far that the opportunity and likelihood of future abuse has diminished to the degree they no longer support a renewal of the order?" (*Ibid.*) Also relevant are the seriousness and degree of risk, such as whether it involves potential physical abuse, and the burdens the protective order imposes on the restrained person, such as interference with job opportunities. (*Ibid.*)

"[T]he physical security of the protected party trumps all of these burdens the original or renewed protective order may impose on the restrained party. Thus, where the protected party has a 'reasonable apprehension' of future *physical* abuse if the current protective order expires, that order should be renewed despite any burdens this inflicts on the restrained party." (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1292.) A defendant's conduct can place a victim in reasonable fear of serious bodily injury without involving any violence. (*Id.* at p. 1299.)

In challenging a renewal order, the restrained party is not permitted "to challenge the truth of the evidence and findings underlying the initial order[.]" (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1290.) We review the trial court's ruling under an abuse of discretion standard, to determine " 'whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420.)

## B. *Analysis*

Bowen argues the trial court erred in renewing the restraining order for several reasons. First, he contends, rather than there being any physical abuse or threat of physical abuse, involved, before the court "[a]t most was the claim that [Bowen] had

14

relationships with members of Lister's family which Lister found divisive, and that [Bowen] was socializing or dining in the City of Hayward, when he lives in San Francisco. There is no evidence that, in so doing, [Bowen] violated the restraining order."

Next, Bowen, noting that Lister's sister referred to Lister as "paranoid," contends that Lister's apprehension was unreasonable. "The fear that the service of court papers could be a subterfuge for the sending of anthrax is plainly unreasonable."

Next, Bowen contends the trial court erred by failing to consider the burden imposed by the restraining order on him in light of the record "being replete with information regarding Bowen's contacts with the CATS organization," which, Bowen contends, "has helped him to maintain 14 years of sobriety." He also contends that he was prepared to testify that the restraining order "creates a substantial impediment to his ability to secure work," apparently because it purportedly harms his business and reputational interests before the court abruptly cut off testimony at the end of the November 9 hearing.

Bowen concludes that, in light of the restraining order being on the basis of non-violent conduct, mostly between Bowen and third parties, and all in the "remote past" except for his brief entry into the CATS building at the invitation of the director of the office in response to a "crisis," the court did not properly consider the factors enumerated in *Ritchie* and incorrectly renewed the restraining order.

Lister responds with a number of arguments in defense of the court's order. We need not review them all. Bowen's contentions are unconvincing in light of evidence that he knowingly violated the protective order on July 7, 2011 in a manner that caused reasonable apprehension to Lister, particularly considered with the evidence of stalking that led to the court's issuance of the initial restraining order, and the trial court's continuing to allow him access to certain CATS offices for income-producing purposes.

The trial court placed great emphasis on Bowen's July 7, 2011 violation in its ruling, finding Bowen's knowing violation to be "very concerning." Bowen gives us no reason to conclude the court's evaluation exceeded the bounds of reason. As the court

noted, the facts indicate that Bowen knew the terms and scope of the protective order, and Bowen did not, and does not, challenge this. Instead, he emphasizes that his visit to CATS involved a "crisis" and was by invitation. He fails to explain why these circumstances excuse his knowing violation, and we can think of none. The record indicates that the court was aware of CATS's activities and Bowen's history with it when it issued its initial restraining order and nonetheless prohibited him from the activity he engaged in on July 7, 2011. Assuming the circumstances that day were as described by Bowen, it can be reasonably concluded from the record that he entered the CATS building in knowing defiance of the order and without making any effort to obey it, such as by attempting to be of assistance off-site. It almost goes without saying that any violation of a restraining order is very serious, and gives very significant support for renewal of a restraining order. Nonetheless, apparently it needs to be said here, particularly in light of the characterization of this violation in Bowen's reply brief as "a de minimis and technical violation if at all."

Bowen's July 7, 2011 violation of the restraining order is particularly significant in light of the facts underlying the issuance of the initial restraining order, which the court also referred to in its November 9 ruling. Lister rightly points out that Bowen's prior stalking, like his recent violation, occurred around Lister's workplace, and it was reasonable for the court to conclude his recent violation made her feel apprehensive about her safety there under the circumstances. The evidence presented at the November 9 hearing amply supported this conclusion. It indicated that she stayed away from her workplace and, according to a coworker, even after she returned to work, "was very distressed—crying, unable to focus on her . . . case load, in fear . . . that her work area is no longer a safe place."

As we have discussed, the underlying findings and facts supporting an initial order "often will be enough in themselves to provide the necessary proof" to renew the protective order. (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1291.) We need not make such a determination here in light of Bowen's July 7, 2011 violation. The court was within its discretion to conclude that the evidence together indicated it was more probable than not

16

there was a sufficient risk of future abuse to find that Lister's apprehension was genuine and reasonable. (See *Avalos v. Perez* (2011) 196 Cal.App.4th 773, 777 [although there had been no contact during the two-year term of the restraining order, a visit by the restrained party's friend to the protected party's restaurant workplace to deliver "greetings" from the restrained party, along with the initial mental and physical abuse, was "ample" support for the protected party's continued fear].)

As for Bowen's summary argument that the court failed to consider or inquire about Bowen's contacts with the CATS organization in weighing the burden of the restraining order on him, the record indicates this was a topic referred to in the testimony and known by the court. The court's renewed restraining order, as did the prior orders, plainly took the burden into account when it ordered that Lister could come within 100 yards of four CATS offices "for the sole purpose of conducting any income-producing matters requiring [Bowen] to be present." Bowen fails to establish that the court abused its discretion in determining this struck a proper balance between the interests of the parties.

Finally, Bowen's argument that the court gave insufficient attention to the "substantial impediment to his ability, as a contractor, to secure work" caused by the restraining order because it "abruptly" closed testimony at the end of the November 9 hearing is also unpersuasive. The court gave Bowen the opportunity to present testimony. The record indicates his counsel questioned Bowen until she indicated that she had no more questions, Lister cross-examined him, Bowen's counsel conducted a brief re-direct examination and stated she had no further questions, and Bowen's counsel then confirmed to the court that it had heard all the testimony she intended to call. Bowen's record citation in support of his argument does not establish that the court abruptly closed testimony. Therefore, we find no merit in this argument.

In short, we find the trial court made no error and did not abuse its discretion in renewing the restraining order against Bowen based on the evidence and considerations we have discussed herein. In light of our conclusion, we do not discuss the other evidence cited by the parties. We also have no need to discuss Bowen's additional

17

argument that the trial court erred by relying on the fact of Bowen's litigation as a ground for renewal of the restraining order. However, given the attention paid to this issue at oral argument by the parties, we are obliged to comment in the event that there are further proceedings below. We are decidedly unpersuaded by the argument, to the extent Bowen asserts it, that a trial court cannot, as a matter of law, rely on a party's litigation conduct in determining whether or not a restraining order should be renewed. We see no reason why a court, along with findings that it might make about such things as a party's inappropriate demeanor in court or troublesome statements as a witness, cannot also find, where appropriate, that a party's litigation strategies and tactics are evidence of inappropriate behavior that provides grounds for a restraining order's renewal. Nonetheless, we do not need to, and do not, make a determination of this issue herein.

We also do not address Bowen's argument in his opening brief, as part of this "litigation" claim, that the court unfairly struck, as not probative, his counsel's attempts to question Lister about her motive for seeking to renew the restraining order. In his reply brief, Bowen argues this action by the court violated due process and Evidence Code section 788, and that these are independent grounds for finding error. We disregard this argument because it is tardily made without explanation for the first time in Bowen's reply brief. (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3 ["[p]oints raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before"].)

### III. *Overbreadth*

Bowen also argues that the trial court erred by issuing an overbroad injunction that improperly invaded his constitutionally protected associational interests by renewing the restraining order "without regard for [Bowen's] stated, long-standing relationship with the social service organization for which [Lister] works primarily 'in the field,' " which order "barred him from either receiving or giving treatment to fellow recovering alcoholics, without any inquiry into the potential overbreadth of the order." We disagree.

Bowen similarly argued in his previous appeal that the initial restraining order was unconstitutionally overbroad because it barred him from contacting Lister's family

18

members.  We explained in that opinion that our Supreme Court has stated that "although the Constitution recognizes and shields from government intrusion a *limited* right of association, it does not recognize 'a generalized right of "social association." ' " (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1110).  The United States Supreme Court "has identified two kinds of associations entitled to First Amendment protection—those with an 'intrinsic' or 'intimate' value, and those that are 'instrumental' to forms of religious and political expression and activity." (*Ibid*.)

Bowen does not establish that either interest is implicated by the court's order, or how his rights have been violated, particularly in light of the court's allowing him contact with certain CATS offices for income-producing purposes.  His sparse argument does not cite to any evidence establishing that the court's order bars him from participating in activities that he would otherwise participate in, nor to any legal authority beyond the most general in arguing that a constitutional violation has occurred under the present circumstances.  " 'A judgment or order of the lower court is *presumed correct*.  All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.  This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error."  "[C]onclusory claims of error will fail." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)  Bowen's conclusory claim of error does so here.

**DISPOSITION**

The court's order is affirmed.  Lister is awarded costs of appeal.

19

 

_____
Lambden, J.

We concur:


_____
Kline, P.J.


_____
Richman, J.