Filed 7/20/23  Marriage of Fidelman CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of KELLY and MARK FIDELMAN. | D079402 |
| KELLY FIDELMAN,<br><br>Respondent,<br><br>v.<br><br>MARK FIDELMAN,<br><br>Appellant. | (Super. Ct. No. 18FL012451N) |

APPEALS from orders of the Superior Court of San Diego County, William Y. Wood, Judge.  Affirmed.

Mark Fidelman, in pro. per., for Appellant.

Linda Cianciolo for Respondent.

In October 2018, Kelly Fidelman (Kelly) filed for divorce and requested a domestic violence restraining order (DVRO) against her then-husband, Mark Fidelman (Fidelman).  The trial court issued a DVRO in 2018 and renewed the order in March 2020 for one year.  The court awarded Kelly attorney fees in March 2021, and in May 2021, the court renewed the March 2020 DVRO and made it permanent.

Fidelman appeals the trial court's 2021 DVRO renewal and fees orders, arguing that the trial court erred by: (1) finding that Fidelman cyberstalked Kelly; (2) relying on Fidelman's litigation conduct as grounds for renewing the DVRO in violation of the litigation privilege (Civ.Code, § 47, subd. (b)); (3) finding, by a preponderance of the evidence, that Kelly had a reasonable apprehension of future abuse; (4) excluding testimony from the parties' minor son; (5) infringing on Fidelman's Second Amendment rights by prohibiting him from possessing firearms in the DVRO; (6) authorizing a one-year DVRO renewal in March 2020 when Family Code section 6345[1] provides that "[an order] may be renewed, upon the request of a party, either for five or more years, or permanently . . . "; and (7) awarding attorney fees to Kelly without inquiring about Fidelman's ability to pay.

We conclude that Fidelman has forfeited any challenge to the trial court's findings related to the March 2020 DVRO renewal by failing to appeal that order. Fidelman has also forfeited his arguments regarding the court's reliance on his litigation conduct, his possession of firearms, and his ability to pay the attorney fees award, by failing to raise these issues in the trial court. We further conclude that the trial court had a sufficient basis to find that Kelly had a reasonable apprehension of future abuse. To the extent Fidelman contends that his son's testimony should have been admitted during the May 2021 renewal proceeding, we conclude that the trial court did not abuse its discretion in excluding his testimony. Accordingly, we affirm.

---

[1] Further statutory references are to the Family Code unless otherwise stated.

2

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Initial DVROs and March 2020 DVRO Renewal*

The parties have been engaged in contentious litigation since October 2018, when Kelly petitioned for divorce and requested a DVRO against Fidelman.[2] The trial court issued a temporary DVRO in October 2018, followed by a one-year DVRO issued in November 2018 after an evidentiary hearing. The November 2018 DVRO required Fidelman to relinquish any firearms he had in his possession, as authorized by section 6389, subdivision (a). In May 2019, Fidelman requested a DVRO against Kelly, and in November 2019, Kelly requested renewal of her existing DVRO against Fidelman.

After a three-day trial in early March 2020, the court denied Fidelman's request for a DVRO and granted Kelly's renewal request after finding that Fidelman was the primary aggressor in a cyberstalking incident that occurred in October 2019. Specifically, the court found that the parties' minor son took Kelly's laptop computer from her residence while he was under Fidelman's supervision, and that Fidelman viewed and downloaded its contents. Based on that incident, the court found that Kelly proved she had a reasonable fear of continued cyberstalking by Fidelman. The court renewed Kelly's DVRO for another year through March 2021, extending the accompanying requirement that Fidelman not possess any firearms.

Fidelman filed a notice of appeal of the March 2020 DVRO in May 2020, but abandoned his appeal in July 2020. In June 2020 he also requested reconsideration of the March 2020 DVRO renewal, which the trial court

---

[2] The record on appeal does not include most of the documents filed in the underlying proceedings, so we take certain procedural history from the register of actions included in the record.

denied.[3]  Fidelman filed another appeal from the denial of his request for reconsideration, but we dismissed that appeal as untimely.

B. *Kelly's Request for Attorney Fees*

Kelly requested attorney fees in July 2020 and the court granted her request in March 2021, awarding her $53,120 pursuant to section 6344. Fidelman orally opposed the request at a hearing in March 2021, arguing that he was not served, that the court should inquire about the source of Kelly's legal fee payments, and that proceedings should be stayed pending his appeal of the trial court's denial of his motion for reconsideration of the March 2020 renewal order.  In a May 2021 order, the court rejected Fidelman's arguments, finding that Fidelman was served with Kelly's request for fees and that he failed to file a responsive declaration.  In awarding fees, the court considered Fidelman's October 2020 income and expense declaration and the fact that he had equity in a marital asset.

C. *May 2021 DVRO Renewal*

Kelly requested renewal of the March 2020 DVRO in March 2021.  In April and May 2021, the court heard four days of testimony from the parties and Matt Albee, a computer expert who had previously testified in March 2020 regarding Kelly's laptop.

Kelly testified that she was seeking to renew the DVRO because she felt Fidelman had invaded her privacy, and she worried that he would continue to harass her.  In May 2020, Fidelman used a messaging application to tell Kelly that she "could have agreed to a deal that would have saved the

---

[3]     In addition to his abandoned appeal of the March 2020 DVRO renewal and leading up to the current appeal, Fidelman has filed appeals in connection with the denial of his motion for reconsideration of the March 2020 renewal, a petition for peremptory writ, and two petitions for writ of mandate.  All have been dismissed or denied.

kids and [Fidelman] a lot of time and money and aggravation[.]" In June 2020, Fidelman messaged Kelly to ask about what happened to certain furniture. Another time in August 2020, Fidelman messaged Kelly to say that he knew she was not at home, and that she would not be home for two days. Kelly was alarmed by this because she never shared her travel plans with him. When Fidelman sent the above messages, the DVRO limited his communications with Kelly to those regarding custody and visitation only. Receiving those messages made Kelly feel bullied, and like she could not "do anything without [Fidelman] either knowing or giving [her] a hard time about it[.]"

In June 2020, Fidelman also emailed Kelly's employer demanding her employment records and threatening sanctions for non-compliance. In his emails, Fidelman misrepresented a special master's orders regarding the employer's discovery obligations. Fidelman also threatened the employer's in-house counsel with contempt of court, and Kelly's employer subsequently retained outside counsel to respond to Fidelman's subpoenas. Kelly believed Fidelman's actions were negatively impacting her employment and potentially limiting her career advancement.

Albee testified in the 2021 renewal hearing that he felt threatened after Fidelman sent several emails in May 2020 demanding that Albee turn over a copy of Kelly's hard drive after the March 2020 renewal. Fidelman also threatened "legal action" to "collect financial damages" if Albee did not hand over the data, which Albee declined to do. When Kelly learned of Fidelman's attempts to obtain a copy of her hard drive from Albee, she felt harassed, believing that Fidelman was "relentless" and that his attempts to get her data were "never ending." Kelly testified that since March 2020, she

had felt "absolutely afraid" of Fidelman and what he would do absent a protection order.

Fidelman testified, among other things, about the messages he exchanged with Kelly after March 2020 and the subpoenas he sent to Kelly's employer. At closing, he argued that Kelly's testimony about fearing harassment lacked credibility. He contended that because there was no evidence of physical abuse, there was no need for a DVRO. Fidelman characterized Kelly's interpretation of his messages as unreasonable, and he further argued that Kelly's fear of negative employment repercussions was unsubstantiated because she presented no evidence of such repercussions happening.

After reviewing the evidence, hearing testimony, and considering the parties' arguments, the court found that Kelly met her burden of showing by a preponderance of the evidence that she had a reasonable apprehension of future abuse. The court began by reminding the parties that it would not permit Fidelman to challenge the truth of the evidence and findings underlying earlier orders. The court also observed that "a party's litigation strategies and tactics may be evidence of inappropriate behavior that may provide grounds" for renewing a DVRO.

The court went on to find that a party need not fear physical abuse to justify renewing a DVRO, and that the nature of the underlying cyberstalking allegations implicated the invasion of Kelly's private, "extremely sensitive information" contained in her laptop. The court credited Kelly's testimony regarding her fear that Fidelman would continue to "stalk her and harass her and disturb her peace." In contrast, the court found Fidelman's testimony lacking in credibility. The court concluded that the prior findings regarding Fidelman's cyberstalking conduct and Kelly's

6

credible testimony were sufficient grounds on their own to support the reasonableness of Kelly's apprehension of future abuse.

However, the court found that additional conduct by Fidelman also supported renewing the DVRO. The court determined that Fidelman "clearly misrepresented" a discovery order to Kelly's employer in an attempt to obtain her personal information, which constituted "an outright violation of the restraining order." Similarly, the court found that Fidelman deliberately manipulated and misled Albee in an attempt to obtain a copy of Kelly's hard drive from him, which also constituted a violation of the existing DVRO. The court concluded that even if Fidelman's misrepresentations to Albee and Kelly's employer were not violations of the DVRO, they were persuasive evidence supporting the reasonableness of Kelly's apprehension that Fidelman would persist in harassing her, absent court-ordered protection. As for the messages Fidelman sent Kelly regarding subjects unrelated to custody or visitation, the court concluded those messages were also a violation of the DVRO.

In light of these findings, the court renewed the DVRO permanently and prohibited Fidelman from possessing or acquiring ammunition or firearms. Fidelman timely appealed the permanent DVRO and the award of attorney fees to Kelly.[4]

---

4 The permanent DVRO was filed on May 11, 2021. In his notice of appeal filed on July 19, 2021, Fidelman indicated he was also appealing the trial court's May 18, 2021 order in which the court: (1) continued a hearing on Kelly's request for order (RFO) to have Fidelman declared a vexatious litigant; (2) dismissed Fidelman's contempt motion; (3) denied Fidelman's RFO for an injunction and sanctions; and (4) granted Kelly's request for attorney fees and costs under section 6344, awarding her $53,120.

DISCUSSION

I

In this appeal from the 2021 DVRO renewal and fees order, Fidelman challenges aspects of the trial court's March 2020 DVRO renewal, and for the first time on appeal, he also raises arguments regarding the litigation privilege pursuant to Civil Code section 47, subdivision (b),[5] the Second Amendment, and his ability to pay attorney fees. We conclude that Fidelman has forfeited any challenge to the court's findings related to the March 2020 renewal by failing to timely appeal that order. We further conclude that Fidelman has forfeited the other arguments raised for the first time on appeal.

"California follows a 'one shot' rule under which, if an order is appealable, appeal must be taken or the right to appellate review is forfeited." (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 761, fn. 8 (*Baycol*), citing Code Civ. Proc., § 906 [the powers of a reviewing court do not include the power to "review any decision or order from which an appeal might have been taken" but was not]; see *Kinoshita v. Horio* (1986) 186 Cal.App.3d 959, 967 ["If [a] ruling *is* appealable, the aggrieved

---

In light of our November 29, 2021 order regarding appealable issues, and the scope of what is actually addressed in Fidelman's opening brief, we construe his appeal of the May 18, 2021 order as limited to the attorney fees award.

[5] Civil Code section 47, subdivision (b), provides in relevant part that a privileged publication or broadcast is one made "[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 . . . of Title 1 of Part 3 of the Code of Civil Procedure," with certain exceptions listed in subsequent subdivisions.

8

party *must* appeal or the right to contest it is lost."].)  Fidelman abandoned his initial appeal from the March 2020 DVRO renewal, and we dismissed as untimely his subsequent appeal from the order denying reconsideration of the March 2020 DVRO renewal.

Because Fidelman did not timely appeal the March 2020 DVRO, he cannot now challenge the findings supporting that renewal.  Accordingly, we conclude that he has forfeited his arguments regarding: (1) whether sufficient evidence supported the court's finding that Fidelman cyberstalked Kelly before the March 2020 renewal; (2) whether a one-year DVRO renewal is permitted under section 6345; and (3) whether the court should have admitted testimony from the parties' minor son at the March 2020 renewal trial.

Similarly, we conclude that Fidelman forfeited his litigation privilege, Second Amendment, and ability-to-pay arguments by failing to raise those objections at trial.  "[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court.  [Citation.]  The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. omitted.)  "Issues presented on appeal must actually be litigated in the trial court—not simply mentioned in passing.  '[W]e ignore arguments, authority, and facts not presented *and litigated* in the trial court.' " (*Natkin v. Cal. Unemployment Ins. Appeals Bd.* (2013) 219 Cal.App.4th 997, 1011, internal quotation marks omitted.)

Here, Fidelman argues on appeal that his litigation tactics and threats of legal action are "absolutely privileged" under Civil Code section 47, subdivision (b), and cannot be considered harassment for DVRO purposes. However, at no time during the April and May 2021 renewal hearings did

9

Fidelman ever assert that the litigation privilege should apply. He argued that his litigation practices did not constitute harassment, that his actions did not negatively impact Kelly's employment, and that her own attorneys also used the same aggressive tactics against him. But he made no mention of the litigation privilege, and when the court found that some of Fidelman's actions in pursuing discovery supported the reasonableness of Kelly's apprehension of future abuse, Fidelman did not object.

Nor did Fidelman object when the court imposed restrictions on his possession of firearms during the last day of the May 2021 renewal hearing. Fidelman was aware that the court might impose such restrictions because it had already done so when granting the temporary DVRO in November 2018 and again in March 2020.[6] After the court delivered its oral decision, Fidelman objected generally to the ruling and requested a new trial, but he made no mention of the firearms restriction or the Second Amendment. In both criminal and civil cases, a constitutional claim is generally forfeited by the failure to assert it in the trial court. (*San Diego Police Department v. Geoffrey S.* (2022) 86 Cal.App.5th 550, 579–580 [First and Second Amendment claims asserted for first time on appeal from gun violence restraining order were forfeited for failure to raise them in trial court].) Thus, we conclude that Fidelman forfeited the Second Amendment issue for appeal.

---

[6] Section 6389, subdivision (b), also requires that any request for a DVRO provide notice to the respondent that he shall be ordered to relinquish firearms for the duration of the DVRO. Because the March 2021 DVRO renewal request is not included in the record on appeal, and Fidelman has not argued otherwise, we must presume that it complied with this notice requirement.

Lastly, Fidelman also forfeited any challenge to the award of attorney fees due to his inability to pay. When the court heard Kelly's request for attorney fees in March 2021, Fidelman first objected based on improper service. When the court found that he had been properly served, Fidelman then argued that Kelly was not paying for her attorneys and should not be awarded fees. Fidelman also repeated an argument he made earlier in the hearing that it would be inappropriate to move forward with any proceedings, including awarding attorney fees, while his appeal was pending. However, after the court asked if he had anything to add, Fidelman said, "I think I've respectfully put my objections on the record, Your Honor. I think at this point I'm done." Notably, none of the objections he made referenced his ability to pay, even though the court expressly cited Fidelman's October 2020 income and expense declaration in awarding attorney fees. (See *In re Schleich* (2017) 8 Cal.App.5th 267, 292–293 [finding trial court's reference to husband's financial capacity in awarding attorney fees reflected its consideration of ability to pay, and husband forfeited challenge to court's refusal to consider new income and expense declarations because he failed to object to the ruling].)

Thus, we conclude that Fidelman has waived the litigation privilege, Second Amendment, and ability-to-pay issues, as well as any challenge to the court's findings related to the underlying March 2020 renewal. We therefore turn to his two remaining non-forfeited challenges.

11

## II

Fidelman contends that the trial court erred in finding, by a preponderance of the evidence, that Kelly had a reasonable apprehension of future abuse. We disagree.

"Abuse" in the domestic violence context may, under section 6203, subdivision (a)(4), include engaging "in any behavior that has been or could be enjoined pursuant to Section 6320." (§ 6203, subd. (a)(4).) Those behaviors include "stalking, threatening . . . harassing, . . . contacting, either directly or indirectly, . . . coming within a specified distance of, or disturbing the peace of the other party, and, in the discretion of the court, on a showing of good cause, of other named family or household members." (§ 6320, subd. (a).)

Abuse need not be violent or physical to warrant the issuance or renewal of a DVRO. (See *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1495–1496 (*Nadkarni*); § 6345, subd. (a).) "[S]ection 6320 broadly provides that 'disturbing the peace of the other party' constitutes abuse . . . ." (*Nadkarni*, at p. 1497.) "[T]he plain meaning of the phrase 'disturbing the peace of the other party' in section 6320 may be properly understood as conduct that destroys the mental or emotional calm of the other party." (*Nadkarni*, at p. 1497.) To obtain a DVRO, a protected party has the burden to show by a preponderance of the evidence that a reasonable person would have a " 'reasonable apprehension' " of future abuse. (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1290 (*Ritchie*).)

We review a grant of injunctive relief for abuse of discretion. (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420 [abuse-of-discretion standard applies to a grant or denial of a DVRO].) To the extent we are called upon to review the trial court's factual findings, we apply a substantial evidence

standard of review.  (*In re Marriage of G.* (2017) 11 Cal.App.5th 773, 780.)  As a trier of fact, the trial judge is required to reject evidence only when it is "inherently improbable or incredible, i.e., 'unbelievable *per se*,' physically impossible or 'wholly unacceptable to reasonable minds.'  [Citations.]"  (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968, internal quotation marks omitted.)  On appeal, we do not reweigh the evidence or second guess the credibility of witnesses.  (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531.)  In determining whether substantial evidence supports the court's order, we view the evidence in the light most favorable to the order.  (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1151.)

Here, Kelly testified that she felt Fidelman would continue to invade her privacy and harass her, absent a DVRO.  When describing her reaction to Fidelman's attempts to get her hard drive from Albee, she said that Fidelman was "relentless" and that his attempts to get her data were "never ending."  Albee himself testified that he felt threatened by Fidelman's persistent demands for Kelly's data and his threats of legal action.  Fidelman's similarly dogged pursuit of Kelly's employment information caused Kelly to believe that his actions would have a negative impact on her employment and limit her career advancement.  The evidence supported her belief, showing that Fidelman's threats and demands to Kelly's employer included misrepresentations, and subsequently led her employer to retain outside counsel.

The admitted evidence also included messages Fidelman sent to Kelly criticizing her for continuing to litigate their divorce, asking about missing furniture, and commenting on her whereabouts, even though she did not inform him of her travel plans.  At the time Fidelman sent those messages, the DVRO limited his communications with Kelly to those regarding custody

13

and visitation only. The court justifiably relied on these and other violations of the existing DVRO in deciding that renewal was appropriate. (See *Lister v. Bowen* (2013) 215 Cal.App.4th 319, 335 (*Lister*) ["It almost goes without saying that any violation of a restraining order is very serious, and gives very significant support for renewal of a restraining order."].) Considering this evidence, it was also reasonable for the court to credit Kelly's testimony that she felt bullied and harassed by Fidelman, and that she could not "do anything without [Fidelman] either knowing or giving [her] a hard time about it[.]"

The court thus had a sufficient basis to conclude that Kelly had a reasonable apprehension that Fidelman would continue disturbing her peace, which amounts to abuse for DVRO purposes. (See *Nadkarni*, *supra*, 173 Cal.App.4th at pp. 1495–1497; § 6320, subd. (a).) Accordingly, we affirm the court's finding to that effect.

### III

Lastly, we turn to Fidelman's argument that the trial court should have allowed testimony from the parties' minor son into evidence.[7] We conclude that the trial court did not abuse its discretion in excluding his testimony on relevance grounds.

By way of additional background, in April 2021, Fidelman deposed his son in connection with a separate civil harassment proceeding without notice to the other parties and without any of the other parties' counsel present.

---

[7] To the extent Fidelman argues that his son's testimony should have been admitted during the March 2020 renewal proceedings, for the reasons noted, he has forfeited those arguments by failing to appeal the underlying order. (See *Baycol*, *supra*, 51 Cal.4th at p. 761, fn. 8.) We therefore only consider Fidelman's challenge to the exclusion of his son's testimony during the May 2021 renewal proceeding.

14

Fidelman then sought to admit his son's deposition testimony and call him as a witness during the May 2021 DVRO renewal hearing, purportedly to refute allegations from the March 2020 renewal, to impeach Kelly's credibility, and to describe child abuse allegedly perpetrated by Kelly.

The court found the proposed testimony irrelevant and improper. The court observed that any alleged child abuse was not properly before the court because Kelly was the only protected party listed on the DVRO subject to renewal. The court further noted that custody and visitation issues would be resolved in a separate proceeding, and that the minor's testimony would not be probative in determining whether Kelly has a reasonable apprehension of future abuse. The court determined that the underlying cyberstalking findings from March 2020 should not be relitigated, and the court also decided that it would not allow the minor to provide character testimony.

We use an abuse of discretion standard to review the trial court's rulings determining the relevance and admissibility of evidence. (*People v. Green* (1980) 27 Cal.3d 1, 24–25; *People v. Garcia* (2001) 89 Cal.App.4th 1321, 1334.) The court abuses its discretion in deciding whether to admit evidence only when it acts in an "arbitrary, capricious, or patently absurd manner that result[s] in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10.) Only relevant evidence is admissible (Evid. Code, § 350), and "[t]he trial court has broad discretion . . . in determining the relevance of evidence" (*People v. Horning* (2004) 34 Cal.4th 871, 900).

On appeal, Fidelman only challenges the court's findings regarding the relevance of his son's testimony about the underlying cyberstalking incident, arguing that the testimony was vital for "clear[ing] up" the allegations that served as the basis for the March 2020 DVRO. However, as noted, Fidelman waived his right to challenge the underlying cyberstalking findings, and the

trial court reasonably concluded that relitigating the issue was inappropriate and irrelevant to Kelly's renewal request.  (See *Lister*, *supra*, 215 Cal.App.4th at p. 333 [restrained party in renewal proceedings not permitted to challenge truth of evidence and findings underlying initial DVRO].)  The purpose of the 2021 hearing was to determine whether Kelly could show that she had a reasonable apprehension of *future* abuse.  (See *Ritchie*, *supra*, 115 Cal.App.4th at p. 1290.)  Fidelman makes no persuasive arguments in his brief about how his son's testimony regarding the October 2019 laptop incident would be relevant to that inquiry, nor does he explain how the testimony would be relevant to any alleged conduct after March 2020.

Because the record does not show that the court acted in an "arbitrary, capricious, or patently absurd manner" in excluding the minor son's testimony, we conclude that the court did not abuse its discretion.

## DISPOSITION

The DVRO renewal order issued on May 11, 2021, and the order awarding attorney fees on May 18, 2021, are affirmed.  Respondent shall recover her costs on appeal.


BUCHANAN, J.

WE CONCUR:


DATO, Acting P. J.


KELETY, J.


16