Filed 5/6/15  Marriage of Walker CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of ELENA WALKER and RALPH WALKER. | H037905 (Santa Clara County Super. Ct. No. 1-08-FL145115) |
| ELENA WALKER,<br><br>    Respondent,<br><br>v.<br><br>RALPH WALKER,<br><br>    Appellant. | |

Appellant Ralph D. Walker challenges the trial court's order granting respondent Elena M. Walker's request for renewal of a domestic violence restraining order (DVRO). He claims that the order must be reversed because (1) the trial court "did not follow the legal guidelines" setting forth the requirements for renewal of a DVRO, (2) the court's order is not supported by the evidence, (3) the court abused its discretion in excluding evidence, (4) the court abused its discretion in permitting the children's therapist to

testify at the hearing, (5) Elena's testimony was false and misleading, and (6) the court denied him due process.[1] We reject his contentions and affirm the order.

## I. Background

Ralph and Elena married in 1993 and have two minor sons. In September 2007, Ralph punched Elena several times and caused a large bruise to her arm. On another occasion, Ralph put his arms around the neck of the older son, lifted him off the ground, and choked him. Ralph and Elena separated in January 2008, and Elena filed for a dissolution in February 2008. She also sought a temporary DVRO against Ralph that protected both her and their two sons. Elena declared that Ralph suffered from mental health disorders and had "anger management issues." She recounted how Ralph had repeatedly threatened her and verbally abused her and their sons. In February 2008, Ralph threw a piece of wood at Elena's car as she was driving away with their older son in the car. The piece of wood struck the windshield, which terrified their son. The temporary DVRO was granted.

After Elena obtained the temporary DVRO, Ralph repeatedly violated it. He "showed up" at their younger son's baseball games, and he sent letters to Elena and to the children. The temporary DVRO remained in place until November 2008, when the court granted Elena's request for a three-year DVRO. This DVRO permitted Ralph "peaceful contact with the children during therapeutic visits" with a therapist.

The November 2008 visitation order permitted Ralph only therapeutic visits with the children, and any further contact between Ralph and the children was to be at the recommendation of the therapist. The therapist attempted to initiate therapeutic visits, but the children told her that they did not want to have any contact with Ralph. The

---

[1] Ralph also makes other contentions that are either forfeited or bear no relationship to the order that is under review in this appeal.

2

children were suffering from posttraumatic stress disorder (PTSD) that was aggravated by even discussion of possible contact with Ralph. Both boys were afraid of Ralph. Consequently, no therapeutic visits occurred.

Ralph repeatedly violated the three-year DVRO. In December 2008, Ralph sent an abusive note to Elena and signed it "Ralph the asshole." He also sent her letters in April 2009 and December 2009 pleading with her to let him have contact with the children. In October or November 2010, Ralph tried to arrange a meeting with the teachers of one of the boys.

In early October 2011, Ralph filed a motion to modify the November 2008 visitation order. In his motion, he noted that the DVRO was due to expire in November 2011, and he sought an order permitting "reasonable and gradual future contact" with his sons. He asked to be allowed to begin by e-mailing his sons and then to progress to phone calls and eventually to in-person contact. Elena opposed his modification motion. Ralph's modification motion was set for hearing on November 2, 2011.

In late October 2011, Elena filed a request for a five-year renewal of the DVRO. She submitted a declaration in which she recounted Ralph's numerous violations of the November 2008 DVRO. Elena feared that Ralph would contact her if the restraining order was not renewed. She "worried" that, "[b]ecause he's unstable," he might "take" one of the children. She believed that Ralph was "obsessed" with their younger son, and "[m]any times he said he wanted to take [the younger son]." The children's therapist believed that renewal of the DVRO was in the children's best interest so that they would "feel safe enough emotionally to continue their healing process as a result of their experiences with their father." The older son had "strong negative feelings towards" Ralph and "was fearful and worried about contact with" Ralph. Elena's request to renew the DVRO was set for hearing on November 2, 2011, at the same time as the hearing on Ralph's modification motion. Ralph did not file any opposition to the request for renewal in advance of the November 2 hearing.

3

At the November 2, 2011 hearing, Ralph sought a continuance of the hearing on the renewal request, and the court granted his request and continued the hearing on the renewal request to November 8. The court heard and largely rejected Ralph's modification motion. The court explained: "I'm not willing to do a graduated plan. I'm not willing to do any of that. I'm willing to let him send an innocuous initial e-mail." "I don't think there's any down side." A determination of appropriate content for this initial e-mail was deferred until the November 8 hearing.

At the November 8, 2011 hearing, Elena agreed to deliver a short letter from Ralph to the children that included Ralph's e-mail address so that they could contact him if they wished. The court then proceeded to consideration of the renewal request. Ralph presented to the court a written response to the renewal request that he had not provided to Elena or her attorney in advance. In his response, Ralph asserted that no violations had occurred since 2009 and that the preceding violations had been "unintentional." He declared that he had been regularly seeing both a psychiatrist and a psychologist. Ralph requested "that the Court schedule a long cause hearing at which time I will have the opportunity to cross examine Petitioner's declarants as well as bring in my own witnesses." At the same time, he asserted "that a long cause hearing is entirely unnecessary in light of its alternative, which is a custody evaluation limited in its scope to the question of whether my original proposal for graduated communication is reasonable, and, more important, in the best interest of our sons . . . ." He requested that "the cost of this evaluation be split equally."

The court denied Elena's motion to strike Ralph's belated response and told Ralph that it wanted him "to have a full and fair hearing." Ralph sought "a reasonable extension of time" to further respond to the renewal request and expressed a willingness to stipulate to a temporary extension of the DVRO for 90 days to give him time to respond. Because Ralph seemed to confuse the DVRO renewal issue with visitation issues, the court explained to Ralph that it was not the restraining order that precluded

4

him from having peaceful contact with the children but the custody and visitation orders. "You can come in here if I granted the renewal, you can still make a motion regarding custody and visitation . . . ." "Those are two separate issues." Ralph complained about "the fact that [it] almost seems like [the children are] dictating the terms of the visitation and they just aren't old enough and wise enough to know that." He wanted to "start emailing the kids pretty much at will maybe on a weekly basis . . . ." The court responded: "I have lots of evidence, albeit not recent, that's not in the children's best interest and I have no evidence that it would be. That's as to the custody and visitation. I still need to get back to the issues of the restraining order."

The court told Ralph that Elena did not have to show "recent violations of the restraining order in order to get a renewal." It would be enough for her to show that Ralph "will not accept and doesn't accept that there have been rules set forth about his ability to contact [her] or the boys." The court decided to "continue it for a hearing, a formal hearing" on November 28, 2011. "I will take what [Ralph] submitted as his declaration, as his response. I will accept no late filings anymore. We're done. You bring anything to court, you might as well tear it up because I won't take it. Anything I'm going to have before the hearing has to be in the number of days I'm going to tell you [I] have to receive it and so does the other side. I will take this today and consider it your response, but beyond that, only on the issue of the restraining order and that's all we're going to hear. . . . I'm saying you want to submit anything in evidentiary capacity or anything for me to read, I won't look at it if you brought it to court like you did this." "If there's anything that you want me to read in addition [to the declaration], I want it no later than Monday the 21st."

At the November 28, 2011 hearing, Elena and her witnesses testified, and Ralph cross-examined them and testified on his own behalf. He was permitted to testify in a narrative fashion since he was self-represented. He admitted the incident during which he had thrown a piece of wood that hit Elena's car with his older son in it. And he

5

admitted sending the letters, "yell[ing] at my kids," and trying to arrange communication with his son's teachers. Elena's attorney argued to the court that Ralph "still doesn't get it, he still doesn't understand that he is engaged in conduct that has terrified my client, put her in fear for her personal well being, terrified the children, and the children don't want to see him right now. And he has to accept that. He's in denial over the consequences of his own conduct."

The court granted Elena's renewal request and explained its reasoning. "What I have to look at first, and let me start with [Elena], is whether she entertains a reasonable apprehension of future abuse. If that's reasonable on her part for her and if she's shown me with a preponderance of the evidence that she entertains that reasonable apprehension. I believe she has." The court told Ralph that "I have no evidence that you have any insight at all or take any responsibility for your own conduct." "[A]t this point, you are not willing to follow the rules . . . ." Ralph timely filed a notice of appeal.

## II. Discussion

### A. Trial Court Applied Proper Standards

Ralph contends that the trial court prejudicially erred by failing to apply the objective standard required by *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275 (*Ritchie*).

*Ritchie*, like this case, concerned the renewal of a DVRO. The Second District Court of Appeal held: "A trial court should renew the protective order, if, and only if, it finds by a preponderance of the evidence that the protected party entertains a '*reasonable apprehension*' *of future abuse*. So there should be no misunderstanding, this does not mean the court must find it is more likely than not future abuse will occur if the protective order is not renewed. It only means the evidence demonstrates it is more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension is genuine and reasonable." (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1290, italics added.)

6

The Second District identified in *Ritchie* some of the considerations that the court should take into account in deciding whether to renew a DVRO. "[T]he trial judge ordinarily should consider the evidence and findings on which that initial order was based in appraising the risk of future abuse should the existing order expire." (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1290.) "[T]he mere existence of a protective order, typically issued several years earlier, seldom if ever will provide *conclusive* evidence the requesting party entertains a 'reasonable apprehension' of future abuse of any kind should that order expire. But the existence of the initial order certainly is relevant and the underlying findings and facts supporting that order often will be enough in themselves to provide the necessary proof to satisfy that test." (*Ritchie*, at p. 1291.) Although the court should consider the "findings and facts" underlying the initial DVRO, the restrained party may not "challenge the truth of the evidence and findings underlying the initial order" as that would violate principles of collateral estoppel. (*Ritchie*, at p. 1290.)

It may also be relevant for the court to consider "any significant changes in the circumstances surrounding the events justifying the initial protective order." (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1291.) In addition, "the court may have to weigh the seriousness as well as the degree of the risk [of future abuse] against the significance of the burdens the restrained party will experience if subjected to a continuing protective order." (*Ritchie*, at p. 1292.) One possible burden that the court may consider is that, "where children are involved, a protective order designed to prohibit access to an abused spouse may have the collateral effect of limiting the restrained party's access to his (or her) children even when they are not potential targets of abuse." (*Ritchie*, at p. 1291.)

The trial court plainly applied the "reasonable apprehension of future abuse" standard set forth in *Ritchie*. At the commencement of the November 28, 2011 hearing on Elena's renewal request, the court explained that "[t]he standard for renewal is by a preponderance of the evidence that [Elena] has a *reasonable apprehension of future*

7

*abuse* and not necessarily having to show subsequent conduct . . . ."**[2]**  (Italics added.)

During the hearing, the court reiterated the *Ritchie* standard.  "My job today is to decide whether or not the petitioner, by preponderance of the evidence, shows that she has a *reasonable apprehension of fear of you*."  (Italics added.)  Before Ralph testified, the court told Ralph to "remember that the petitioner's burden is to show she still has a *reasonable apprehension in terms of her fear of future abuse*."  (Italics added.)  When the court ruled, it stated:  "What I have to look at first, and let me start with [Elena], is *whether she entertains a reasonable apprehension of future abuse*.  If that's reasonable on her part for her and if she's shown me with a preponderance of the evidence that she entertains that reasonable apprehension.  I believe she has."  (Italics added.)  We cannot accept Ralph's claim that the court applied the wrong standard as the court repeatedly expressly affirmed at the November 28 hearing on the renewal request that it was applying the correct standard.

Ralph complains that the court referred to Elena's "concerns" and argues that "concerns" are inadequate to support renewal of a DVRO.  Though the court did mention Elena's concerns, its findings were not premised on merely her concerns.  The court expressly stated that Elena had to prove "reasonable apprehension" by "a preponderance of the evidence," which it explained meant that she had to show "that's reasonable on her part," and it expressly found that "she has."  The court's findings demonstrate that it

---

**[2]**       It is true that the court misstated the standard at the end of the November 2, 2011 hearing.  "So the standard of review for a renewal on a restraining order is just she has to show she continues to be concerned and she can literally bootstrap past events.  That's why she can kind of say here's what the history looked like, and what she does is enumerate a number of violations."  Since the court did not rule on the DVRO renewal request at the November 2, 2011 hearing and clearly followed the proper standard when it did rule on the DVRO renewal request at the November 28, 2011 hearing, this earlier misstatement was immaterial.

8

required Elena to show that her apprehension of future abuse was reasonable and that it did not base its renewal of the DVRO on Elena's subjective concerns.

## B.  Sufficiency of the Evidence

Ralph contends that the evidence did not support the trial court's finding that Elena's fear of future abuse was reasonable.[3]  We disagree.

Ralph relies on *Lister v. Bowen* (2013) 215 Cal.App.4th 319 (*Lister*) to support his contention.[4]  *Lister* was an appeal by Bowen from the renewal of a DVRO protecting Lister.  The original DVRO had been based on stalking, not physical abuse.  (*Lister*, at p. 334.)  The Court of Appeal, relying heavily on *Ritchie*, found that the renewal of the DVRO was properly based on Bowen's recent violation of the original DVRO by visiting Lister's workplace.  (*Lister*, at pp. 334-335.)  Ralph argues that *Lister* requires consideration of his intent in violating the DVRO.[5]  We can find nothing in *Lister* to support his claim.  *Lister* relied on *Ritchie*, and *Ritchie* imposed no such requirement.

The evidence supporting the court's finding was abundant.  The original temporary DVRO was based at least in part on physical abuse.  Ralph had assaulted both

---

[3]     Ralph repeatedly asserts that we should exercise de novo review because "the facts are undisputed."  Yet he repeatedly challenges the trial court's factual findings.  For instance, he claims that it was Elena who was threatening and harassing him, rather than the converse, and that "[t]here is no hint of Ralph being physically abusive to his sons (or anyone)."  He also asserts that "[h]is conduct had been perfect."  Ralph at another point claims that his physical violence against Elena was "*self-defense*" and that "Elena was the stalker."  In any case, we would reach the same conclusion even under a de novo standard of review.

[4]     Ralph also relies on *Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72 (*Gonzalez*).  *Gonzalez*, which concerned the validity of an administrative finding that a child abuse report was substantiated, has no relevance to any of the issues in this appeal from the renewal of a DVRO.

[5]     However, he also asserts that "ex post facto considerations" preclude reliance on *Lister* and that *Lister* is distinguishable.

Elena and his older son and had thrown a piece of wood that hit a car containing both Elena and the older son. After Elena obtained a temporary DVRO, Ralph repeatedly violated both it and the three-year DVRO. His refusal to comply with previous restraining orders strongly supported a finding that he would continue to engage in threatening or harassing conduct if not restrained. In fact, his adamant assertion that his prior violations were "all harmless legal violations" demonstrates that he continues to refuse to take responsibility for his conduct. In this context, the trial court had a substantial basis for finding that Elena's apprehension of future abuse, both physical and otherwise, was eminently reasonable.

Ralph argues that the trial court failed to consider his "change of circumstance." While Ralph had moved to another city, he presented no evidence that he had moved on with his life to the extent that there was no longer a significant risk of future abuse. He had continued to violate the three-year DVRO as late as the year prior to the renewal request. The evidence reflected that Ralph had not gained "any insight at all or take[n] any responsibility for [his] conduct" and continued to be "not willing to follow the rules." Ralph's continuing refusal to "follow the rules" indicated that there was a significant risk of future abuse.

Ralph also urges that the court failed to properly weigh the risk of future abuse against the burden on him of renewal. His point appears to be that the renewal of the DVRO limits his access to his sons. He presented no evidence that the renewal of the DVRO would have any other impact on him. As the trial court explained to him, his contact with his sons is limited by the custody and visitation orders *not the DVRO*, which permits peaceful contact with the children in connection with therapeutic visitation, the only visitation that is permitted under the visitation order.

## C. Exclusion of Evidence

Ralph claims that the court abused its discretion in excluding evidence.

At the November 8, 2011 hearing, three weeks before the formal hearing on Elena's renewal request, the court very explicitly told Ralph: "You bring anything to court, you might as well tear it up because I won't take it. Anything I'm going to have before the hearing has to be in the number of days I'm going to tell you [I] have to receive it and so does the other side. I'm saying you want to submit anything in evidentiary capacity or anything for me to read, I won't look at it if you brought it to court like you did this [written response]." "If there's anything that you want me to read in addition [to the declaration], I want it no later than Monday the 21st."

At the November 28 hearing, during Ralph's cross-examination of Elena, he asked the court if he could "read" the letters that he had put on Elena's doorstep in 2009. The court refused to allow him to do so because the letters were "not in evidence" and had not been disclosed to Elena's attorney as the court had ordered Ralph to do no later than November 21. Later, during the testimony of one of Elena's witnesses, Ralph sought "permission to show a photo" to the witness. Elena's attorney objected on the ground that this photo had not been disclosed in advance of the hearing as the court had ordered. The court excluded the photo. "I'm not going to permit you to bring anything into evidence you have not shared with [Elena's attorney]. I told you that last time." The court also found that the photo was "irrelevant." During his own testimony, Ralph tried to introduce a letter from his doctor. The court excluded the letter as hearsay.

The letters and the photo concerned Ralph's prior acts of abuse that had supported the three-year DVRO.[6] Since the restrained party is not permitted to challenge the

---

[6]    Ralph also mentions in connection with this contention a letter from Elena's attorney concerning settlement negotiations that he claims the court excluded. This letter, which was attached to a declaration submitted by Ralph in support of his motion to modify visitation, had no relevance to whether Elena had a reasonable apprehension of future abuse. What Ralph sought to show was that Elena's attorney had improperly attempted to connect visitation issues to monetary issues. Ralph fails to cite to any indication in the record that he offered this letter into evidence at the November 28

11

evidence and findings supporting the initial order in opposing a renewal, this evidence was not admissible in the first place. The letter from Ralph's doctor was hearsay, so the court's ruling was correct. Furthermore, the trial court was also correct in ruling that none of this evidence could be admitted due to Ralph's failure to disclose it by the November 21st deadline. The trial court did not abuse its discretion in excluding this evidence.

### D. Purportedly False and Misleading Testimony

Ralph claims that reversal is required because Elena and her attorney gave false and misleading testimony. This claim is frivolous. Elena's attorney did not testify at trial, and the trial court credited Elena's testimony. "To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment . . . ." (*People v. Huston* (1943) 21 Cal.2d 690, 693, disapproved on a different point in *People v. Burton* (1961) 55 Cal.2d 328, 352; accord *People v. Maury* (2003) 30 Cal.4th 342, 403; *DiQuisto v. County of Santa Clara* (2010) 181 Cal.App.4th 236, 261.) Elena's testimony was not apparently false, and it was largely corroborated by other witnesses and Ralph's admissions. We uphold the trial court's decision to credit her testimony.

---

hearing. Hence, there was no evidentiary ruling on its admissibility at the November 28 hearing that he may attack on appeal. In fact, this letter was excluded by the court at the November 2, 2011 hearing on Ralph's modification motion. That ruling is not relevant to the order under appeal in this case.

### E. Parental Rights

Ralph asserts that his parental rights have been abrogated without due process. Again, he misunderstands the nature of the impediments to his contact with his children. The custody and visitation orders control his contact with his children, not the DVRO. The renewal of the DVRO has no impact on his parental rights.

### F. Expert Witness Testimony

Ralph challenges the admission of the testimony of the children's therapist. Since Ralph did not object to the admission of this testimony below, he failed to preserve this issue for appellate review. (Evid. Code, § 353.)

### G. Due Process

Ralph claims that he was deprived of due process because (1) he lacked adequate notice of the hearing, (2) Family Code section 3003 permitted his attempt to contact his son's teachers, (3) the DVRO violates his constitutional rights as a custodial parent, and (3) the DVRO is unconstitutionally vague. He claims that he should have been given the 90-day continuance he requested and that the court's "minute order didn't suggest witnesses might be present."

#### 1. Background

Ralph was an obstreperous litigant. During the November 28, 2011 hearing, he would not follow the court's instructions to stop speaking when there was an objection, and the court admonished him. "THE COURT: [Ralph], what part of [Elena's attorney's] talking and you can't interrupt or when I'm talking, you can't interrupt don't you understand? Just because you talk louder, just because you're persistent doesn't mean I'm going to entertain your question. So you have to follow the rules." After a further colloquy, the court said: "Geez. I've let you pursue a line of questioning because I believe if you -- it would make you feel you've been heard. It is not relevant and I'm

13

going to stop it right now." The court terminated Ralph's cross-examination of that witness at that point.

Later in the hearing, when the court asked if he wished to cross-examine the children's therapist, Ralph complained: "I want to say, first of all, for the record that I do feel I'm being denied due process and I want to make sure that goes on the record." "I'm not being allowed to present incredibly relevant evidence." Asked by the court what he was referencing, Ralph asserted that he was referring to a photograph that he had been precluded from showing to a previous witness because he had failed to disclose it to Elena's attorney in advance of the hearing.

When Elena's attorney objected during Ralph's testimony, the court responded: "[I]f you don't mind, I'm sort of indulging [Ralph] with a combination of testimony and argument, really, so he can get his point across." Later, Ralph asserted that "this whole thing has caught me off guard." The court asked him: "What do you mean this whole thing put you off guard?" This colloquy then occurred. "[Ralph]: This hearing today. [¶] THE COURT: Because you were not aware we were having a hearing? [¶] [Ralph]: I knew we were having that, but I thought my declaration was going -- I was going to ask there be a limited custody evaluation. [¶] THE COURT: Okay. That isn't part of what we're doing today because this is petitioner's motion to renew the restraining order." Eventually, when Ralph's ramblings got even more off topic, the court said "I'm going to stop you now . . . ." Elena's attorney chose not to cross-examine Ralph.

During his closing argument, Ralph asserted "all of this just smacks of total lack of due process. I did not realize we were going to have this here today." The court responded: "[Y]ou need to explain that statement. It's the second time you've said it. What were you aware what was going to happen today?" Ralph replied: "I didn't know we were going to have a long-cause hearing." The court said: "You were well aware because I gave you all the outlines of what this hearing was going to be about, set it on a special day so you can be completely prepared. I gave you rules and deadlines and lots of

14

information how to proceed."  Ralph replied:  "Right.  Okay."  The court told Ralph:  "[W]hen you tell me you're denied due process, you need to be very, very specific so that I can understand what you're saying because blanket phrases don't cut it."  Ralph responded:  "What I mean by that in a layman's term is I don't feel all my -- I guess technically I had the -- I just -- I -- I -- I don't feel I'm -- the evidence that I would like to bring up, for example -- well, first of all -- never mind."  The court asked:  "Is there anything else you'd like to say?"  Ralph replied:  "Um, no."

## 2.  Analysis

Ralph complains that he did not receive adequate notice that the November 28 hearing would involve testimony of witnesses.  In advance of the November 2 hearing, Ralph explicitly asked the court in writing to "schedule a long cause hearing at which time I will have the opportunity to cross examine Petitioner's declarants as well as bring in my own witnesses."  At the November 2 hearing, Ralph sought and obtained a continuance of the hearing on Elena's renewal request.  At the November 8 hearing, Ralph again sought a continuance.  The court told Ralph that it wanted him "to have a full and fair hearing."  The court agreed to "continue it for a hearing, a formal hearing" three weeks later.  The court told Ralph that "anything in evidentiary capacity or anything for me to read" needed to be filed at least a week in advance of the November 28 "formal hearing."  Clearly Ralph had sufficient notice that the "formal hearing" on Elena's renewal request would be held on November 28 and that any evidence he wished to present would need to be presented at that time.  The court's continuance of the hearing from November 2 to November 28 provided Ralph with adequate time to prepare, and the court was not required to grant his request for a 90-day continuance rather than granting a 26-day continuance.  We reject Ralph's claim that he was not adequately notified that the court would be hearing from witnesses at a long-cause hearing on November 28, particularly since this was exactly what Ralph had sought and obtained.

15

Ralph's reliance on Family Code section 3003 with regard to his attempt to contact his son's teachers is misplaced. That statute states that a parent with joint legal custody "share[s] the right" to make educational decisions for a child. (Fam. Code, § 3003.) It does not permit a parent to violate a DVRO in connection with attempting to obtain educational information about a child whom he is not permitted to contact due to a DVRO.

Although Ralph claims that the DVRO is unconstitutionally vague, he makes no attempt to specify how any of its provisions are beyond reasonable comprehension. We reject his unsupported claim.

## H. Other Contentions

In his reply brief, Ralph raises additional issues that we do not address either (or both) because they are forfeited due to his failure to raise them in his opening brief or because they do not relate to the DVRO but to the visitation order.

## III. Disposition

The trial court's order granting Elena's request for a five-year renewal of the DVRO is affirmed.

_____
Mihara, J.

WE CONCUR:


_____
Premo, Acting P. J.



_____
Elia, J.