Filed 1/5/21; Certified for Partial Pub. 1/28/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| In re the Marriage of CAROL and WILLIAM CARLISLE. | C084891 |
| CAROL CARLISLE,<br><br>Respondent,<br><br>v.<br><br>WILLIAM CARLISLE,<br><br>Appellant. | (Super. Ct. No. PFL20150037) |

In April 2015, in the midst of marriage dissolution proceedings, plaintiff filed a request for a domestic violence restraining order (DVRO) against defendant, her then-husband. The trial court granted a two-year DVRO. Defendant appealed. While that appeal remained pending, a little more than a month before the original DVRO was set to expire, plaintiff filed a request to renew the DVRO. After a hearing, the trial court

1

granted plaintiff's request, renewing the DVRO for five years.  In an unpublished opinion, we affirmed the issuance of the original DVRO.[1]

Defendant, an attorney appearing in propria persona, appeals from the granting of the renewed DVRO.  Defendant asserts that:  (1) the trial court lacked jurisdiction to renew the DVRO while the appeal from the granting of the original DVRO remained pending, (2) the trial court erred in rendering its decision without reading the pleadings, (3) the trial court erred in excluding the witnesses and exhibits he offered, (4) the trial court erred in rendering its decision without considering the case law in the pleadings, (5) the trial court did not afford him sufficient time to present his defense, and, (6) in effect, substantial evidence does not support renewal of the DVRO.

We affirm.

---

[1] *In re Marriage of Carlisle* (Sept. 29, 2017, C079547) [nonpub. opn.].  We take judicial notice of this opinion.  (Evid. Code, § 452, subd. (d)(1); *Mendoza v. Wichmann* (2011) 194 Cal.App.4th 1430, 1433, fn. 2.)

## Original DVRO

Plaintiff filed a request for a DVRO against defendant under the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.).[3]  On April 24, 2015, after a hearing, the trial court issued the original DVRO (Judicial Council Form, form DV–130).  The DVRO expired by its terms on April 24, 2017.  The protected persons under the DVRO were plaintiff and a named minor daughter of the parties.[4]

## Request to Renew DVRO

On March 16, 2017, plaintiff filed a request to renew the DVRO on a permanent basis.  In a declaration submitted in support of her request, plaintiff noted that, at that time, defendant's appeal from the issuance of the original DVRO remained pending in this court.

According to plaintiff, on April 20, 2015, after being served with plaintiff's original request for a DVRO, defendant was arrested for assault of a process server (Pen. Code, § 241, subd. (c)) and vandalism (Pen. Code, § 594).  On August 19, 2016,

---

[2]  Since this matter was originally commenced, the parties have divorced and plaintiff has had her former name restored.  She is once again known as Carol Fauerbach rather than Carol Carlisle.  Plaintiff requested that we take judicial notice of this change as memorialized in an order of the El Dorado Superior Court.  Decision on the request was deferred pending calendaring and assignment of the panel.  Other than the caption, we refer to the parties here by their procedural posture.  The caption identifies this case as of the time of its commencement, and, for administrative consistency, we do not alter the caption.  Otherwise, while we acknowledge this change, it is not relevant to any material issue presented here, and, accordingly, we deny the request for judicial notice.  (See *Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [matter to be judicially noticed must be relevant to a material issue].)

[3]  Further undesignated statutory references are to the Family Code in effect at the time of the proceedings.

[4]  That daughter is now an adult and is not named as a protected person on the renewed DVRO.

defendant pled nolo contendre.[5]  The court ordered diversion, which included requirements that defendant obey all laws and that he participates in an anger management program.

Plaintiff stated that, after defendant violated the DVRO "numerous" times, she sought amendment of the DVRO.  However, because the appeal from the issuance of the original DVRO remained pending at that time, the trial court determined that it lacked jurisdiction to modify the DVRO.  The parties entered into a stipulation to modify the DVRO, restricting defendant's access to a particular location.

According to plaintiff, because of defendant's "failure to obey laws as ordered due to his violation of the DVRO," the court revoked diversion and scheduled a hearing regarding defendant's violations of the DVRO and violations of diversion.  A petition seeking revocation of diversion appears in the record, which alleged that defendant violated Penal Code section 273.6, which pertains to violation of a court order to prevent harassment, disturbing the peace, or threats or acts of violence.

Plaintiff alleged that defendant violated the original DVRO in several respects. According to plaintiff, on October 16, 2015, defendant left a 20-foot-long birthday banner for the parties' minor daughter at the end of the road that provided the only access to the house where plaintiff lived with the daughter.  Subsequently, defendant left several more signs at that location.  According to plaintiff, defendant had admitted to leaving the original banner, but denied leaving the other signs.  Plaintiff maintained that this was a violation of the DVRO, which forbid defendant from having contact with either plaintiff or the parties' daughter.  Plaintiff filed a report with the El Dorado County Sheriff's Office.  Thereafter, defendant left one more sign.  Plaintiff stated that she remained fearful of defendant being in her neighborhood or on her property, emphasizing

---

[5]  An El Dorado County Superior Court "case print" printout appears in the record, detailing defendant's arrest, the charges, and his August 19, 2016, nolo contendre plea.

4

defendant's "apparent ability to know where we are, especially given his previous use of a tracking device on my car."[6]

Plaintiff asserted that, on April 8, 2016, defendant came within 50 feet of her on Main Street in Placerville and attempted to intimidate her "by glaring at [her] and standing in the only exit to the parking lot in which [she] was parked."[7] Plaintiff stated that she was fearful of defendant approaching her on the street before and after court proceedings. Plaintiff emphasized that, in addition to appearing for proceedings in this matter, both parties were attorneys and thus occasionally appeared at court at the same time for other matters.

On July 22, 2016, the parties' 17-year-old daughter, who was protected under the DVRO, encountered defendant driving on the dead-end road "leading to the road to [plaintiff's] residence." Plaintiff asserted that there would be no reason for defendant to be on that road other than to go to plaintiff's property or to track the actions of plaintiff and the parties' daughter. Plaintiff asserted that defendant admitted in a responsive pleading to being at that location at that time. According to plaintiff, defendant stated: " 'I briefly saw a person getting into a car, and she looked a lot like my daughter,[8] . . . I knew it was probably not [her], but I turned around and retraced my route, thinking that if it was [her], the most likely route she might take would be on' " a particular road that

---

**6** The original DVRO was based in part on defendant attaching a GPS tracking device onto plaintiff's vehicle. (See *In re Marriage of Carlisle* (Sept. 29, 2017, C079547), at p. 31 [nonpub. opn.].)

**7** A Placerville Police Department report is included in the record.

**8** The daughter defendant referred to here was not the minor daughter protected under the original DVRO.

defendant then drove on, passing the street leading to plaintiff's house.[9] Plaintiff asserted that defendant's actions were "particularly upsetting" to her because they demonstrated defendant's "continued propensity to try to stalk" members of the family and to "travel to areas near [plaintiff's] residence which is located off of a dead end street in a very rural area in a town he has no other reason to be in." Plaintiff also asserted that defendant's judgment was questionable because he included admissions of this violation in court submissions. According to plaintiff, this made her "extremely fearful for [her] safety as well as for the safety of our children when they are at [plaintiff's] home."

Plaintiff asserted that, on September 30, 2016, defendant was seen at her residence when she was not home.[10] Plaintiff stated that defendant's continued attempts to come onto and near her property and track what she was doing made her fearful of defendant appearing at her residence, at any time, day or night, to disturb her peace or harm her or her property.

Plaintiff alleged that, in a civil action in the El Dorado County Superior Court, defendant, under oath, misrepresented to the court that he represented her, even though this occurred after the parties separated and after plaintiff secured the original DVRO. Defendant also misrepresented to the court in that action that plaintiff was evading depositions and intentionally failing to appear, matters which, if true, would harm plaintiff in her professional capacity as an attorney. Plaintiff stated that she had been unaware of the relevant proceedings because notice had been sent to defendant's address,

---

[9] An El Dorado County Sheriff's Office report concerning this event appears in the record.

[10] Exhibit 8 to plaintiff's renewal petition was an El Dorado County Sheriff's Office report. It included a witness statement, in which the witness stated she saw an unidentified male walking on plaintiff's property and approaching her house. The statement indicated this incident occurred on September 18, 2016, rather than September 30, 2016, which the parties do not dispute on appeal.

and defendant failed to ensure that plaintiff learned of the notice. Plaintiff asserted that defendant's "impersonation as [plaintiff's] attorney and misrepresentations to the court about [her] have caused [her] to feel harassed, has disturbed [her] peace, and has been harmful to [her] in [her] workplace since his statements have been made before judges and fellow attorneys with whom" she worked.

Plaintiff asserted that, on October 24, 2016, she had a mandatory settlement conference with defendant scheduled at the El Dorado County Superior Court. However, she was also attending another matter with a client. Defendant saw plaintiff with her client, and, apparently assuming the client was plaintiff's boyfriend, told plaintiff's client that he should marry her. When the client informed defendant he was a client, defendant responded that plaintiff was not a very good family law attorney, given that she retained counsel to represent her in her own family law matter. Plaintiff characterized defendant's comments as harassment in the workplace and asserted that they disturbed her peace and made her fearful of what other actions he could take in the future when he sees her interacting with any male client or colleague.

In a statement defendant filed in a mandatory settlement conference, defendant acknowledged that he told other attorneys about how much spousal support plaintiff received, and he implied that he was discussing personal matters, including details about the parties' divorce, with other attorneys. Plaintiff stated that, in such a small legal community, defendant's conduct constituted harassment of her in her workplace, it negatively impacted her ability to practice law, and it disturbed her peace.

On February 2, 2017, plaintiff and defendant appeared in court for a family law hearing. Defendant said to another attorney, loudly, " 'I never should have gotten married.' " Plaintiff asserted that defendant made this comment to harass and embarrass her and to disturb her peace in her workplace.

Plaintiff further asserted that defendant harassed her in litigation from April 2015 through the date when she filed the renewal request. She alleged: defendant's "failure to

disclose community assets and attempts to conceal community assets, his repeated violations of court orders, his repeated perjury to the court, his motion to quash subpoenas, and his repeated and continuous attempts to frustrate the litigation of this family law matter has resulted in us having to appear in court an average of approximately twice per month for almost two years. In addition, [defendant's] pleadings are often abusive . . . and his disparaging comments about [plaintiff] in his pleadings have included, but have not been limited to, that [she] [was] 'menopausal,' [she] '[had] an undiagnosed brain tumor,' [she] [had] a 'spooky' look on [her] face, and that [she] [was] 'delusional' and 'paranoid.' " Plaintiff stated that she felt harassed by defendant's actions, which embarrassed her and disturbed her peace in her workplace. She also asserted that defendant's actions harmed her professional reputation in a small legal community. Additionally, plaintiff asserted that defendant's frustration of legal process constituted financial abuse. According to plaintiff, defendant's comments demonstrated that he had not moved on with his life, and that he maintained anger and animosity towards her, which caused her fear of future harassment and physical harm.

Plaintiff asserted that defendant's harassing actions were becoming more frequent. She asserted that, "[a]lthough [defendant] has repeatedly violated the current restraining order, I am fearful that without a permanent restraining order in place he will never leave me alone. My fear that he will continue to harass me and may try to appear at my residence or work to harm me is well-founded by his actions that resulted in the initial restraining order, as well as his actions since that time."

### Defendant's Response to the Renewal Request

In opposition, defendant denied plaintiff's allegations, asserted that plaintiff was using the DVRO mechanism as "a weapon to harass" him, and characterized the alleged events as instances of plaintiff essentially procuring or causing defendant to unwittingly violate the DVRO. He characterized plaintiff's allegations as "convenient fabrications."

8

Defendant acknowledged leaving a birthday banner for his daughter one mile from plaintiff's house. He denied leaving other signs. Defendant asserted that the areas where he drove on both July 8, 2016, and July 22, 2016, were not areas where he was forbidden to go under the DVRO.

Defendant asserted that, when plaintiff told him that she did not want him to represent her in an action, he offered to execute a substitution of attorneys, but she refused to sign and file it.

Defendant addressed other allegations in plaintiff's declaration: "I have indeed spoken to people when I am in Court. Such is not uncommon for any attorney, especially when meeting people I have known for many years. I have not told anyone that [plaintiff] was not a good attorney. How much spousal support I have been paying is a matter of public record, and is not unusual to discuss things with longtime colleagues, whether in Court socially or in privileged legal consultations with various local attorneys. How much spousal support [plaintiff] requires is largely up to her, and if she requires a large amount of assistance, she should reevaluate her approach towards her professional activities. She has never complained about receiving $8,459.00 a month in spousal support, or discernibly taken any constructive steps to reduce that amount. Finally, I do not recall a statement, 'I never should have gotten married,' but I would certainly agree that I should never have married" plaintiff.

Defendant denied that he was the person witnessed trespassing at plaintiff's property on September 18, 2016, emphasizing numerous differences between the individual described by the witness and his appearance. He further asserted that a computer expert confirmed, based on review of defendant's hard drive, that defendant was at his office working at the time.

Defendant repeatedly asserted that there had never been any allegations of physical abuse.

Defendant asserted that it was plaintiff, not he, who was committing harassment through litigation. He similarly asserted that it was he who was being harmed in the small legal community where both parties practiced, asserting that the issuance of the DVRO framed him as a "criminal," it harmed his professional reputation, and it placed an undue burden on him.

## Hearing

### Plaintiff's Allegations

Plaintiff stated that defendant "has continued to violate the restraining order . . . . And I feel that if I did not have the restraining order there, it would be far worse."

Plaintiff repeated the factual allegations contained in her renewal request. She complained that defendant "just -- he won't stop harassing me" and asserted he was "repeatedly disturbing my peace."

In discussing case law and the applicable standard for granting renewal of a DVRO, plaintiff stated that there was no requirement that a party seeking renewal have fear of physical abuse. However, she further stated that she did reasonably fear physical abuse and stalking.

Plaintiff emphasized that, in connection with seeking the original DVRO, she found a tracking device defendant had placed on her car. She further asserted that, after defendant was released following his arrest for assaulting the process server, he broke into her house. Plaintiff reiterated her position that, while the original DVRO had not prevented defendant from harassing her, matters would be far worse without it. She stated that, with a DVRO in place, she was "not getting peace. If that restraining order was not in place, I'm terrified of being home alone." Plaintiff emphasized she lived in a rural setting, she lived alone, there was no police station near her, she had no close neighbors, and she had "no recourse if he shows up." Plaintiff further asserted that there was domestic violence, there was abusive behavior, and there was addiction. She also emphasized that defendant had violated multiple court orders.

10

**Defendant's Responses and Plaintiff's Replies**

Defendant asserted that there had "never been any domestic violence. I mean, in terms of physical violence, there's never been any domestic [violence] relating to [plaintiff] or the children, anybody." In response to that, the trial court referred to *Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140 (*Burquet*), and stated that "[a]nything that disturbs the peace of another and that's not a Penal Code 415 definition of disturbing the peace. Tranquility, calmness of another is now within the penumbra of what is defined as domestic violence in the State of California." Therefore, the trial court stated that "it doesn't serve an argument to say that there's no domestic violence if there's a history of disrupting one another's peace."

Like plaintiff, defendant reiterated the allegations set forth in his papers. He asserted that plaintiff consistently used the DVRO "as a weapon against" him. Responding to defendant's contention that plaintiff was "stalking" him or following him around to orchestrate a DVRO violation, plaintiff asserted that the parties worked in the same courthouse and so naturally they encounter one another. She asserted that the courts essentially served as a "safe zone" where they could both do what they needed to do.

With regard to an incident in a parking lot near the court, defendant asserted that he arrived for court and parked his car. He was preparing to go to the courthouse when he noticed plaintiff's car pull in. Defendant did not know if plaintiff was in the car. He collected his belongings and walked to court. Yet, according to defendant, "she's calling that me harassing her on the street. And that simply did not happen. What happened was she seems to have a propensity for following me and using this restraining order as a weapon." Plaintiff responded that she was already in the parking lot when defendant pulled in. Plaintiff initially waited and assumed that defendant did not know she was there. However, according to plaintiff, when defendant got out of his car, he stopped, "hovered" at the parking lot entrance for a long time, and glared at her.

11

With regard to plaintiff's allegation that defendant misrepresented that he represented her in a case, defendant asserted that the parties were both suing renters. He seemed to assert that proofs of service showed that they were litigating the matter together. Plaintiff responded that defendant's proofs of service did not establish that he previously represented her in the matter. She stated that a civil law judge found that defendant was not representing her. She stated that she did not have to file a substitution of attorney for him because he never represented her, and she further stated that he had been lying to that court.

Defendant emphasized that, since the issuance of the original DVRO, he felt a stigma and felt as though everyone perceived him as a criminal.

Defendant denied domestic violence, denied placing a tracking device on plaintiff's vehicle, and denied lying to any court.

Defendant stated that he had not been going near plaintiff's residence. He did acknowledge that there "was one incident where I did think I could -- she looks so much like [one of their daughters], okay. And my mom had just died. Perhaps I was a little -- I drove down [a particular road near plaintiff's house] but that's never been part of the restraining order. And I turned right back around, and I drove right back out again."

Defendant asserted that "all we have here" is plaintiff's subjective fear. He emphasized that the DVRO imposed a "huge burden" on him. Defendant further insisted that plaintiff's allegations were unfounded and that there was no "reasonable apprehension here."

**Renewal of DVRO**

On April 14, 2017, the trial court granted plaintiff's application, renewing the DVRO for a period of five years.

12

## I.  Jurisdiction to Renew While the Appeal from the Original DVRO Was Pending

### A.  Additional Background

In his written response to plaintiff's renewal request, defendant asserted that, because the granting of the original DVRO remained pending on appeal, "presumably the Court still lacks jurisdiction to act on this request."  At the hearing, defendant asserted that, because the issuance of the original DVRO remained pending on appeal, it could not be modified, and stated, "I would assume that's still the case with the request for the modification of the current restraining order."

Plaintiff emphasized that she was seeking to maintain the status quo with a DVRO in place.  She noted, "if the appeal finds in [defendant's] favor, the restraining order goes away.  And if it finds in my favor, then the renewed restraining order keeps on going."

### B.  Analysis

Defendant asserts that the trial court lacked jurisdiction to "modify" the DVRO while the appeal from the issuance of the original DVRO remained pending.  The

---

[11]  In a challenge to a judgment, the trial court's judgment is presumed to be correct and the appellant has the burden to prove otherwise by presenting legal authority and analysis on each point made, supported by appropriate citations to the material facts in the record, or else the argument may be deemed forfeited.  (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.)  It is the appellant's responsibility to support claims of error with citation and authority; we are not obligated to perform that function on the appellant's behalf and may treat the contentions as forfeited.  (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 113.)  We have elected against disposing of defendant's appeal on the foregoing grounds.  However, we note that, in his briefing, defendant fails to set forth the applicable standards of review; fails to set forth facts that support the judgment; fails to cite to authority; fails to make specific arguments with citations to the record; relies on factual allegations which were not before the trial court and are not in the record; and, where he has cited to the record, fails to articulate with specificity what we will find at the cited location, the significance of the cited passages, and their impact on his arguments.

decision in that appeal was filed on September 29, 2017, six months after the trial court granted renewal here on April 14, 2017.[12]

Defendant's argument is not fully developed and is not supported by citation to any authority. "The absence of cogent legal argument or citation to authority allows this court to treat the contentions as" forfeited. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830; see also *People ex rel. Reisig v. Acuna* (2010) 182 Cal.App.4th 866, 879 [" 'An appellate brief "should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as [forfeited], and pass it without consideration." ' "].)

Moreover, defendant's argument lacks merit.

"An injunction is a writ or order requiring a person to refrain from a particular act." (Code Civ. Proc., § 525.) "A domestic violence restraining order is a type of injunction, as it is an 'order requiring a person to refrain from a particular act.' " (*Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1503-1504 (*Loeffler*); see also *Molinaro v. Molinaro* (2019) 33 Cal.App.5th 824, 831, fn. 6 [the "issuance of a restraining order is appealable as an order granting an injunction under Code of Civil Procedure section 904.1, subdivision (a)(6)"]; *S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1257-1258 [a restraining order is separately appealable as an order granting an injunction].)

Defendant's unsupported contention that equating a DVRO to an injunction "is like comparing apples to oranges" and that "they are most certainly not the same" is without merit. Defendant's contention is contrary to the authority set forth *ante*, establishing that a DVRO *is* a type of injunction. (*Loeffler, supra*, 174 Cal.App.4th at pp. 1503-1504.)

---

[12] Defendant erroneously states that the decision on the appeal from the issuance of the original DVRO was filed on November 29, 2017.

"Where an injunction of limited duration is appealed, the trial court has power to extend the injunction pending disposition of the appeal if doing so would serve the ends of justice." (*City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 482.) Thus, the trial court had the authority to renew the DVRO pending disposition of the appeal from the granting of the original DVRO if doing so would serve the ends of justice. (*Ibid.*) The trial court, having determined that plaintiff satisfied her burden in seeking renewal of the DVRO necessarily concluded that renewing the DVRO "would serve the ends of justice."

Defendant appears to raise an argument premised on the preclusive effect of a prior trial court order. Although defendant's arguments are not developed, he appears to suggest that the court's conclusion that it could not *modify* the DVRO while the appeal remained pending has a preclusive effect, barring *renewal* of the DVRO. He asserts the trial court's order, which was not appealed, "should therefore be binding on the parties to this matter as res judicata."[13] This argument suffers from numerous flaws. First, it was not clearly raised in these terms in defendant's opening brief, but instead was expressly made only in his reply brief. (*WorldMark, The Club v. Wyndham Resort Development Corp.* (2010) 187 Cal.App.4th 1017, 1030, fn. 7 ["Arguments raised for the first time in the reply brief are untimely and may be disregarded"].) Second, defendant cites no authority to support his contention. (See generally *Conservatorship of O.B.* (2019) 32 Cal.App.5th 626, 633 [an "appellant must provide an argument and legal authority to support his contentions"].) Third, the trial court's order that defendant seeks to give preclusive effect does not appear in the record, defendant has not established its

---

[13] Defendant's contention seems to present a form of collateral estoppel, or issue preclusion, more than a form of claim preclusion. (See generally *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823-825.) Whatever defendant chooses to label his contention, we conclude that it is meritless.

existence, and it is not clear that it would have been an appealable order. Fourth, whether a DVRO, the issuance of which is being appealed, may be *modified* does not present the same question as whether that DVRO may be *renewed*, a question we have answered affirmatively.

Contrary to defendant's contention, the trial court did not lack jurisdiction to renew the DVRO.

## II. The Trial Court's Consideration of the Pleadings

As the hearing commenced, the court stated, "[a]s I informed everybody earlier, I arrived here at 8 o'clock with a stack of files with a lot of reading. And as rapid a reader as I am, there was no way for me to get through everybody's case in a half hour."

Defendant asserts that the trial court erred in rendering its decision without reading the pleadings. Defendant asserts that the trial court should have continued the hearing until it had the opportunity to review the pleadings.

The record does not affirmatively establish that the trial court "did not read th[e] pleadings" as asserted by defendant. Indeed, at one point, the trial court stated that it had been "glancing through here. I see your Points and Authorities. I see the various episodes that you've described and you kind of touched on."

In any event, we may dispense with this issue because defendant has not demonstrated that he suffered prejudice as a result of the trial court's actions in deciding the issues presented without taking more time to review the pleadings. As the appellant, defendant has the burden of affirmatively demonstrating prejudice. (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 455 (*Christ*).) Prejudice is not presumed. (Code Civ. Proc., § 475.) Reversal is not warranted unless the alleged error resulted in a miscarriage of justice. (Cal. Const., Art. VI, § 13; Evid. Code, § 353, subd. (b).) Defendant makes no argument addressing prejudice. Moreover, the record demonstrates that the trial court was apprised of the parties' arguments and allegations of fact at the hearing. Defendant

16

has not established his entitlement to reversal based on the fact that the trial court stated that "there was no way for me to get through everybody's case in a half hour."

### III. The Trial Court's Evidentiary Rulings

### A. Additional Background and Defendant's Contentions

Defendant asserted at the hearing that the description of the individual seen approaching plaintiff's house on September 18, 2016, did not match his description in age, height, weight, or hairstyle. At the hearing, defendant proposed to bring in witnesses to testify concerning his haircut and physical appearance and to the fact that he was using his computer at the time when a trespasser was spotted at plaintiff's home. The court stated that proposed witnesses should have been announced sooner, and then stated, "[w]e are going to wrap this up in about five minutes." Defendant protested and stated his proposed witnesses were on call, although one had to drive from Sacramento and another had to drive from Shingle Springs.

Plaintiff objected to the computer expert's report on hearsay grounds. She also asserted the matter was irrelevant because, even if one accepted that defendant was using his computer at that time, the trespassing incident was "just one of many things he's done to harass me, intimidate me, and . . . violate the restraining order. So this is just one factor." The court concluded, regarding the evidence pertaining to the computer expert's opinion, that "Evidence Code section 352 would be unduly burdensome on the Court and use of time. It is superfluous to the testimony that I've heard from [defendant], so that will dispense with that witness."

With regard to defendant's proposed witnesses who would testify about his haircuts and physical appearance, plaintiff objected on the grounds of relevance. She reiterated that, even if the trespassing incident was discounted, "there's so many other things to substantiate for renewal of the" DVRO. She characterized the prospect of these witnesses as "overly burdensome and superfluous to the argument." The court sustained the objection.

17

The trial court asked the parties if they wished to submit the matter. Defendant responded that he wanted to present his witnesses and evidence, and further stated that, "otherwise, I think I'm going to have to file an appeal."

The court reiterated its conclusion that presenting witnesses to prove these matters "would not be sanctioned under . . . Evidence Code 352[14] where there would be a substantial side trip created by going into those issues. *The Court is planning not to consider that aspect of the allegation in any event. [¶] So the Court is not taking into consideration that particular allegation that you were the person that allegedly was seen at or near the property. That is not part of the Court's consideration.* If you want to appeal that, that's fine too. But *the Court is going to make a ruling based on the petition and the other parts of your response to the petition.*" (Italics added.)

Defendant clarified, "your Honor, . . . you're not taking into account, then, the most recent allegation of violation of the restraining order in September of 2016?" The court responded that it was not considering that allegation, concerning the trespasser reported at plaintiff's house "at all."

Defendant asserts that the trial court improperly excluded the witnesses and exhibits he offered. He repeatedly emphasizes the incident involving the alleged trespasser at plaintiff's home, despite the fact that the trial court stated that it was not considering this alleged incident in making its determination.

## B. Analysis

Defendant specifically raises the trial court's refusal to hear witnesses whose testimony was relevant to disproving plaintiff's allegation that defendant was seen

---

**14** Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

trespassing on her property on September 18, 2016. The subject witnesses would have testified about the haircut one witness routinely gave defendant, defendant's physical condition and appearance as described by a second witness, and that defendant's computer hard drive suggested he was working on his office computer at the time of the incident. Additionally, one of the exhibits defendant wanted to present was an e-mail he sent to his former attorney on September 18, 2016, demonstrating that he was on his computer at the time.

However, the trial court explicitly and repeatedly stated that it would not consider the September 18, 2016, trespassing allegation in reaching its decision.[15] "No evidence is admissible except relevant evidence." (Evid. Code, § 350.) " 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) In light of the court's determination not to consider the allegation involving a trespasser at plaintiff's house, these witnesses, whose testimony was only relevant to whether defendant was the trespasser, had nothing relevant to offer at the hearing.[16] Thus, the trial court did not abuse its discretion in refusing to allow defendant to present these witnesses and the related exhibit.

Defendant also identifies exhibit one, copies of proofs of service, that were part of his opposition to the renewal request. However, he notes that those "exhibits were already part of the files of the El Dorado County Superior Court . . . ." Moreover, at the

---

[15] Defendant asserted in his briefing and again at oral argument that the trial court found this allegation to be "without merit." The court did not make such a finding. Instead, the court informed the parties that it would not consider this alleged incident in making its determination.

[16] Defendant does not assert that successfully rebutting this particular allegation by plaintiff would also call into question the credibility of her other factual contentions.

hearing, the trial court expressly stated, "I'm looking at Exhibit 1," but then opined that "we're getting into minutia." The court also heard the parties' arguments on the significance of the proofs of service. Thus, the trial court did not appear to prohibit defendant from presenting this exhibit.

The trial court properly declined to receive evidence related to the trespassing incident as irrelevant, and it appeared to consider exhibit one consisting of the proofs of service. Moreover, defendant fails to make any argument as to how he was prejudiced by the trial court's evidentiary determinations. (See generally Cal. Const., Art. VI, § 13 [reversal not warranted unless alleged error resulted in a miscarriage of justice]; Evid. Code, § 353, subd. (b) [same]; *Christ, supra*, 2 Cal.App.5th at p. 455 [appellant has the burden of affirmatively demonstrating prejudice]; Code Civ. Proc., § 475 [prejudice is not presumed].) Defendant's contentions concerning the trial court's evidentiary rulings are without merit.

## IV. The Trial Court's Knowledge and Consideration of the Applicable Case Law

Defendant asserts that it was error for the trial court to render its decision without considering the case law set forth in the pleadings. According to defendant, "[i]t was obvious that the Judge was not familiar with the relevant case law," although he offers no substantive support for this accusation other than asserting that the trial court granted a one-year extension which was assertedly not authorized.[17]

Defendant offers neither proof that the trial court was ignorant of the relevant case law nor authority in support of his contention. The transcript of the hearing demonstrates that, contrary to defendant's contention, the trial court was familiar with the relevant law. At one point, the trial court raised *Burquet, supra*, 223 Cal.App.4th 1140, and asked if

---

[17] The trial court did initially state that it would grant a one-year extension. However, the court then ordered the DVRO renewed for five years under section 6345, subdivision (a), which authorizes renewal either for five years or permanently.

20

defendant was familiar with it, to which defendant responded that he was not. The court then paraphrased from *Burquet*, that "[a]nything that disturbs the peace of another and that's not a Penal Code 415 definition of disturbing the peace. Tranquility, calmness of another is now within the penumbra of what is defined as domestic violence in the State of California." The court then referenced *In re Marriage of Evilsizor and Sweeney* (2015) 237 Cal.App.4th 1416 (*Evilsizor*), as "yet another extension after the Burquet case . . . . So it doesn't serve an argument to say that there's no domestic violence if there's a history of disrupting one another's peace."[18] Defendant told the court that he merely wanted to emphasize that there was no history of physical violence, to which the trial court responded, "That's fine. It's potentially the threat of physical violence which is now -- has the definition of domestic violence has been extended in interpretations by Burquet. It's just simply disturbing the peace. And that can be threats of violence, stalking, intimidation, you know, just not leaving somebody else alone."

In short, defendant has failed to offer any support for his contention the trial court was not familiar with the applicable case law, a contention that is belied by the record.

## V. Time Allowed at the Hearing

### A. Additional Background and Defendant's Contentions

At one point during the hearing, defendant was presenting proofs of service concerning the civil case in which he was allegedly representing plaintiff without her knowledge. The court stated, "I think we're getting into minutia." At another point, the trial court stopped defendant in order to point out to him that, if he had a criminal defense attorney, whatever he said could be used against him. Later, when defendant was discussing bringing in witnesses who would address matters relevant to the trespassing issue, the court stated that the witnesses should have been announced earlier, and then

---

[18] We discuss conduct that can be enjoined under the DVPA, *post*.

21

said, "[w]e are going to wrap this up in about five minutes." Later still, as defendant continued to argue about the trespassing incident, he asked to finish his response before the court ruled. The court informed defendant: "You've got two minutes." Defendant began to make a statement, in response to which the court observed that defendant was repeating himself. Subsequently, the court asked if the matter was submitted and plaintiff responded affirmatively. Defendant made more statements, many of which were not relevant to the issue presented. Again, the court asked if the matter was submitted, and defendant responded, "Unfortunately so."

Defendant asserts that the trial court failed to allow sufficient time for a full hearing. He chides the trial court for interrupting him when he was attempting to respond to plaintiff's allegations.[19] He contends that the trial court did not allow him to present a full response. And he claims that the trial court's conduct violated his right to due process.

## B. Analysis

The record does support the conclusion that the trial court occasionally interrupted defendant. However, our review of the record reveals that, in several instances, the court did not do so to rush or cut off the substance of defendant's argument. Rather, the court interrupted defendant to advise him that what he said in court could be used against him, to curtail argument as to irrelevant matters, and to inform him that he was repeating himself. Otherwise, the court gave defendant ample time to present the points he wanted to make.

---

[19] Defendant also asserts that at a point when they were not on the record, the trial court indicated its intention to leave by noon. With no record support for this allegation, we do not consider it. (*Dhawan v. Biring* (2015) 241 Cal.App.4th 963, 967, fn. 7 ["We cannot consider facts that are not supported by the record, and therefore decline to mention or address those events."].)

There is no support in the record for defendant's contention that the trial court did not afford him sufficient time and opportunity to present his case. Additionally, defendant has not set forth what he would have done differently had he not felt rushed by the trial court. Accordingly, defendant has not shown prejudice.

Defendant also asserts that the matter should have been continued to allow him to present a complete response to plaintiff's allegations. However, as plaintiff notes, defendant did not request a continuance. (See *Millennium Corporate Solutions v. Peckinpaugh* (2005) 126 Cal.App.4th 352, 361 [plaintiff's assertion that trial court should have granted a continuance is erroneous because, among other things, trial counsel did not request a continuance]; see also *People v. Alcala* (1992) 4 Cal.4th 742, 782 [rejecting defense argument, raised for first time on appeal, that trial court should have granted a continuance; defendant did not seek a continuance, so the argument was not properly before the Supreme Court].)

## VI. Substantial Evidence Supporting Renewal of the DVRO

### A. Defendant's Contentions

Defendant makes several arguments under separate headings which are addressed to the sufficiency of the evidence supporting the issuance of the renewed DVRO. According to defendant, the trial court acknowledged that there was no history of domestic violence committed by defendant. He further asserts that no sufficient factual basis supported the renewal of the DVRO. Defendant asserts that the trial court failed to consider plaintiff's abuse of the DVRO and the hardship the DVRO imposes on him.

### B. "Abuse" Under the DVPA, DVROs, Renewal, and the Standard of Review

The DVPA "permits the trial court to issue a protective order 'to restrain any person for the purpose' of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved; the petitioner must present 'reasonable proof of a past act or acts of abuse.' " (*Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 820 (*Rodriguez*), fn. omitted, quoting § 6300.)

Section 6211 defines "domestic violence" as "*abuse* perpetrated against," among others, a spouse or former spouse. (§ 6211, subd. (a).) The definition of abuse in this context is key. Section 6203 provides: "(a) For purposes of this act, 'abuse' means any of the following: [¶] (1) To intentionally or recklessly cause or attempt to cause bodily injury. [¶] (2) Sexual assault. [¶] (3) To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another. [¶] (4) *To engage in any behavior that has been or could be enjoined pursuant to Section 6320.* [¶] (b) *Abuse is not limited to the actual infliction of physical injury or assault.*" (§ 6203, italics added.) Section 6320 includes as conduct that may be enjoined under that section, "molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, . . . *harassing*, telephoning, including, but not limited to, making annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, *or disturbing the peace of the other party . . . .*" (§ 6320, subd. (a), italics added.) Thus, the definition of "abuse" under the DVPA is much broader than acts of physical abuse or threats of physical abuse. (*Perez v. Torres–Hernandez* (2016) 1 Cal.App.5th 389, 398 (*Perez*); accord, § 6203, subd. (b).) Rather, "[a]nnoying and harassing an individual is protected in the same way as physical abuse." (*Perez*, at p. 398.) So too is disturbing the peace of the protected party. (§ 6320.) "[T]he plain meaning of the phrase 'disturbing the peace of the other party' in section 6320 may be properly understood as conduct that destroys the mental or emotional calm of the other party." (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497 (*Nadkarni*); see also *Evilsizor, supra,* 237 Cal.App.4th at pp. 1424-1425; *Burquet, supra*, 223 Cal.App.4th at pp. 1146-1147.)[20]

---

[20] As the trial court observed, the definition of disturbing the peace related to Penal Code section 415 does not apply to the DVPA. (*Burquet, supra*, 223 Cal.App.4th at p. 1146.)

"Section 6345, subdivision (a) provides that a trial court may renew a restraining order 'upon the request of a party, either for five years or permanently, *without a showing of any further abuse since the issuance of the original order*, subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party . . . .' When contested, a request to renew a restraining order should not be granted pursuant to section 6345 simply because the requesting party has 'a subjective fear the party to be restrained will commit abusive acts in the future.' " (*Rybolt v. Riley* (2018) 20 Cal.App.5th 864, 873-874, italics added.) "However, an imminent and present danger of abuse is not required." (*Lister v. Bowen* (2013) 215 Cal.App.4th 319, 332 (*Lister*), citing *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1288 (*Ritchie*).) Rather, renewal of a DVRO requires a finding, by a preponderance of the evidence, that there is a "reasonable apprehension of future abuse." (*Ritchie,* at pp. 1279, 1283, 1290; accord, *Lister*, at p. 333.) "[T]his does not mean the court must find it is more likely than not future abuse will occur if the protective order is not renewed. It only means the evidence demonstrates it is more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension is genuine and reasonable." (*Ritchie*, at p. 1290; accord, *Lister*, at p. 333.)

" 'The trial court's ruling on a request to renew a [DVRO] is reviewed for an abuse of discretion. [Citation.] An abuse of discretion occurs when the ruling exceeds the bounds of reason. [Citation.] But, the exercise of discretion is not unfettered in such cases. [Citation.] "All exercises of discretion must be guided by applicable legal principles, however, which are derived from the statute under which discretion is conferred. [Citations.] If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law. [Citation.] Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal.

25

[Citation.]" [Citation.] The question of whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law [citation] requiring de novo review.' " (*Perez, supra*, 1 Cal.App.5th at pp. 396-397, quoting *Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463.)

"To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review." (*Loeffler, supra*, 174 Cal.App.4th at p. 1505 [applying substantial evidence standard on appeal from denial of application to terminate DVRO issued under section 6345].) Accordingly, "[w]e resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762 (*Schild*).)

## C. Forfeiture

"An appellant asserting lack of substantial evidence must fairly state all the evidence, not just the evidence favorable to the appellant. [Citation.] '[A]n appellant who challenges a . . . finding by the judge in a nonjury trial . . . must marshal *all* of the record evidence relevant to the point in question and affirmatively demonstrate its insufficiency to sustain the challenged finding.' " (*Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 415.) "An appellant who fails to cite and discuss the evidence supporting the judgment cannot demonstrate that such evidence is insufficient." (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408.) "An appellant . . . who cites and discusses only evidence in [his or] her favor fails to demonstrate any error and waives the contention that the evidence is insufficient to support the judgment." (*Ibid.*) "If the appellant fails to fairly state all material evidence, we may deem waived any challenge based on insufficiency of the evidence." (*Chicago Title*, at p. 415.)

Here, defendant's briefing relies only on material that supports his contentions, and ignores the material supporting the judgment. Thus, defendant has forfeited his

contentions addressed to the sufficiency of the evidence supporting the trial court's determination. In any event, his contentions fail on the merits.

### D. Analysis[21]

At the hearing, plaintiff represented that defendant continued to violate the original DVRO, and she felt matters would be far worse if she did not have the DVRO. The trial court agreed and, based on the evidence in the record, so do we.

Plaintiff stated that defendant had appeared on and near her property, as he admitted in pleadings and as the parties' daughter witnessed. Defendant generally denied going near plaintiff's property, but he did acknowledge there "was one incident where I did think I could -- she looks so much like [one of their daughters], okay. And my mom had just died. Perhaps I was a little -- I drove down [a particular road near plaintiff's house] but that's never been part of the restraining order. And I turned right back around, and I drove right back out again."

Plaintiff stated defendant tried to intimidate her on the street before court hearings. Defendant agreed that an incident took place in a parking lot near court, but characterized it differently, stating that plaintiff arrived after he did, and he collected his belongings and went to court. In response, plaintiff stated she was in the parking lot when defendant arrived, and when defendant got out of his car, he stopped, "hovered" at the parking lot entrance for a long time, stood there, and glared at her.

---

**21** As is clear, the trial court did not consider the September 18, 2016, alleged trespassing incident in making its determination. We will disregard the evidence related to that incident as well.

We note here that defendant repeatedly asserts that on December 1, 2017, the El Dorado County Superior Court dismissed criminal charges related to this allegation. However, there is no judgment in the record to support this contention. This makes sense because the trial court granted the renewed DVRO on April 14, 2017. Thus, the record events occurred months before this alleged judgment would have been entered.

27

Plaintiff stated that defendant had disclosed personal information about her in their small community which, she asserted, constituted harassment in the workplace. He had stated in pleadings that plaintiff had an undiagnosed brain tumor, that she was menopausal, that she was delusional, that she had a spooky demeanor, and that she was paranoid. According to plaintiff, defendant "just -- he won't stop harassing me." Plaintiff asserted that defendant was "just repeatedly disturbing my peace." She stated that she did fear physical abuse and stalking, and asserted that there was "reasonable fear."

Plaintiff stated that, with the DVRO in place, she was not "getting peace. If that restraining order was not in place, I'm terrified of being home alone." Plaintiff emphasized she lived in a rural setting, she lived alone, there was no police station near her, she had no close neighbors, and she had "no recourse if he shows up." Plaintiff further asserted that, contrary to defendant's representations, there was domestic violence, there was abusive behavior, and there was addiction. She also emphasized that he had violated multiple court orders.

In addition to the events occurring since the issuance of the original DVRO, "the trial judge ordinarily should consider the evidence and findings on which that initial order was based in appraising the risk of future abuse should the existing order expire." (*Ritchie, supra*, 115 Cal.App.4th at p. 1290.) "[T]he mere existence of a protective order, typically issued several years earlier, seldom if ever will provide *conclusive* evidence the requesting party entertains a 'reasonable apprehension' of future abuse of any kind should that order expire. But the existence of the initial order certainly is relevant and the underlying findings and facts supporting that order often will be enough in themselves to provide the necessary proof to satisfy that test." (*Id.* at p. 1291; accord, *Lister, supra*, 215 Cal.App.4th at p. 333.) In this regard, according to plaintiff, days prior to the issuance of the original DVRO, defendant assaulted a process server. After defendant was released following his arrest for that incident, he broke into her house. Plaintiff also emphasized

28

that she found a tracking device that defendant had placed on her car in her original request for a DVRO.

In addition to plaintiff's representations, the hearing demonstrated that defendant essentially views the DVRO exclusively through the lens of how it affects him. His statements generally addressed how difficult it has been for him, the restrained party, to have the DVRO in place. Additionally, defendant's papers and statements at the hearing demonstrate his ongoing willingness to discredit and show contempt for plaintiff.

We conclude that substantial evidence — including the evidence presented by plaintiff and the legitimate and reasonable inferences to be drawn therefrom — supports the trial court's determination that plaintiff established, by a preponderance of the evidence, that she had a reasonable apprehension of future abuse. (See generally *Schild, supra*, 232 Cal.App.3d at p. 762; *Lister, supra*, 215 Cal.App.4th at p. 333; *Ritchie, supra*, 115 Cal.App.4th at pp. 1279, 1283, 1290.) Much of the evidence gave rise to factual conflicts and questions of credibility. However, we must "resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Schild*, at p. 762.) We conclude here that it is. Again, we note that the definition of abuse includes harassment and disturbing the peace of plaintiff by destroying her mental or emotional calm. (*Evilsizor, supra,* 237 Cal.App.4th at pp. 1424-1425; *Burquet, supra*, 223 Cal.App.4th at pp. 1146-1147; *Nadkarni, supra*, 173 Cal.App.4th at p. 1497.) Viewed with this definition of abuse in mind, there was ample evidence supporting a reasonable apprehension such conduct will continue. Defendant's assertions in the trial court and on appeal that there was no history of domestic violence miss the point.[22]

---

[22] Misrepresenting the record, defendant asserts that the trial court "acknowledge[d] that there [was] no history of domestic violence" committed by him. To support this

Defendant also asserts that the trial court failed to properly consider plaintiff's alleged abuse of the DVRO in making its decision. Defendant testified about how he felt that plaintiff abused the DVRO process to create violations. He asserted that plaintiff consistently used the DVRO "as a weapon against" him. According to defendant, plaintiff created situations in which she could "reciprocate some type of an interpretation that I'm violating the restraining order, including when we come to hearings." To support his contention that the trial court failed to properly consider these matters, he cites only to pages where he made this argument. These passages do not establish that the trial court did not consider them. They only establish that defendant made an argument that was impliedly rejected by the trial court. Defendant has failed to establish his claim that the trial court failed to properly consider his claim.

Similarly, with regard to defendant's contention that the trial court failed to consider the hardship the DVRO imposes on him, defendant only cites to pages of the hearing transcript where he asserts that the DVRO imposes a hardship on him. Defendant is correct that in considering a request to renew a DVRO, "the burdens the protective order imposes on the restrained person, such as interference with job opportunities," are a relevant consideration (*Lister, supra*, 215 Cal.App.4th at p. 333), although the "physical security of the protected party trumps all of the[] burdens the original or renewed protective order may impose on the restrained party." (*Ibid.*)

___

contention, defendant cites to pages in the hearing transcript in which he denied committing domestic violence. Thus, defendant cites passages that do not support the proposition for which they are cited and which do not support his claim that the trial court acknowledged that there was no domestic violence. Indeed, as noted, in response to defendant's contention that there had never been any domestic violence, the trial court took pains to explain that abuse includes disturbing the peace and, given that definition of abuse, it was simply inaccurate to say there had been no domestic violence. Defendant also cites to a page in the hearing transcript where he stated that there was no "physical violence," to which the court responded, "I understand that." But again, that is beside the point. Physical abuse is not required for a DVRO.

Defendant fails to supply any support in the record for his contention that the trial court failed to consider the hardship the DVRO imposes on him.

Defendant asserts that there "has been no finding of any substance to [plaintiff's] various allegations." Defendant is incorrect. Renewal of a DVRO requires a finding, by a preponderance of the evidence, that there is a "reasonable apprehension of future abuse." (*Ritchie*, *supra*, 115 Cal.App.4th at pp. 1279, 1283, 1290; accord, *Lister, supra*, 215 Cal.App.4th at p. 333.) The trial court granted plaintiff's application for renewal of the DVRO, necessarily finding, by a preponderance of the evidence, that plaintiff established a reasonable apprehension of future abuse.

In short, defendant's contentions that the trial court failed to consider various aspects of his case are completely meritless. His true contention is that the trial court should have found his case more persuasive than plaintiff's. In essence, defendant invites us to reweigh the evidence. However, as defendant should know, an appellate court " 'has no power to judge the effect or value of, or to weigh the evidence; to consider the credibility of witnesses; or to resolve conflicts in, or make inferences or deductions from the evidence. We review a cold record and, unlike a trial court, have no opportunity to observe the appearance and demeanor of the witnesses. [Citation.] "Issues of fact and credibility are questions for the trial court." [Citations.] It is not an appellate court's function, in short, to redetermine the facts.' " (*In re S.A.* (2010) 182 Cal.App.4th 1128, 1140, quoting *In re Sheila B.* (1993) 19 Cal.App.4th 187, 199-200; accord, *Scott v. Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454, 465 [when "considering a claim of insufficient evidence on appeal, we do not reweigh the evidence, but rather determine whether, after resolving all conflicts favorably to the prevailing party, and according the prevailing party the benefit of all reasonable inferences, there is substantial evidence to support the judgment"].) "Under the substantial evidence rule, we 'must accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact.' " (*In re S.A.*, at p. 1140,

31

quoting *In re Casey D.* (1999) 70 Cal.App.4th 38, 53.) And " '[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420; accord, *Lister, supra*, 215 Cal.App.4th at p. 333.)

Substantial evidence supports the trial court's determination to renew the DVRO.

## DISPOSITION

The order is affirmed. Plaintiff shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____/s/_____
MURRAY, J.

We concur:

_____/s/_____
ROBIE, Acting P. J.

_____/s/_____
RENNER, J.

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| In re the Marriage of CAROL and WILLIAM CARLISLE. | C084891 |
| WILLIAM CARLISLE,<br><br>        Appellant,<br><br>    v.<br><br>CAROL CARLISLE,<br><br>        Respondent. | (Super. Ct. No. PFL20150037)<br><br>ORDER CERTIFYING OPINION<br>    FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

APPEAL from a judgment of the Superior Court of El Dorado County, Vicki Ashworth, Judge. Affirmed.

William Carlisle in pro. per., for Appellant

Weintraub Tobin Chediak Coleman Grodin, Brendon J. Begley, for Respondent.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of Parts II - VI.

1

THE COURT:

The opinion in the above-entitled matter filed on January 5, 2021, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


FOR THE COURT:


	/s/	
ROBIE, Acting P. J.



	/s/	
MURRAY, J.



	/s/	
RENNER, J.

2